# Illinois Official Reports

## Appellate Court

---

### *People v. Spivey*, 2017 IL App (2d) 140941

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KAVIN SPIVEY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0941 |
| Filed | January 25, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 07-CF-4850; the Hon. Theodore S. Potkonjak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and S. Amanda Ingram, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Barry Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Zenoff and Schostok concurred in the judgment and opinion. |

¶ 1    Defendant, Kavin Spivey, appeals from an order of the circuit court of Lake County granting the State's motion to dismiss his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) seeking relief from his convictions of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2006)), armed violence (720 ILCS 5/12-11.1(a), 33A-2(a) (West 2006)), armed robbery (720 ILCS 5/18-2(a)(2) (West 2006)), and being an armed habitual criminal (720 ILCS 5/24-1.7(a)(2) (West 2006)). We affirm.

¶ 2    Defendant's convictions were based on the following evidence, which was presented at a bench trial. Kristie Kim testified that on the morning of November 30, 2007, she visited a gas station located near the Gurnee Mills shopping center. After she made a purchase at the gas station's convenience store and returned to her vehicle, a black male approached and demanded that she give him all her money. When Kim asked the man if he was serious, he lifted his shirt, revealing a handgun in the waistband of his pants. He then pulled Kim out of the car, took her wallet, and ran away toward a Toys "R" Us store. As the man fled, Kim observed that a second black male, who was standing behind her car, ran in the same direction as the man who took her wallet. Kim told police that the man who took her wallet wore a faded, worn, gray hoodie. The other man wore a hoodie, but Kim did not remember what color it was. When shown a photo lineup, Kim identified someone other than defendant as the man who took her wallet.

¶ 3    David Bryant, who was working at the gas station, testified that a woman purchased cigarettes at the convenience store. After she left the store, Bryant observed two black males approach her. He then observed the men running away. The woman told Bryant that she had been robbed. Bryant chased the two men. One of the men stopped about 20 feet from Bryant, pulled out a gun, and fired a shot. The two men then ran to a van and drove away. According to Bryant, the man with the gun was wearing a tan flannel coat or jacket. Several witnesses testified that they observed two men running and/or that they heard gunshots at the scene of the incident. One witness testified that the men drove away in a black and gold Ford pickup truck. Gurnee police officers learned that a vehicle fitting that description had driven through a toll plaza on Interstate 94 without paying the toll. The police obtained photographs of the truck's license plate, which was issued by the State of Wisconsin. The truck was registered to Katrina Fleming.

¶ 4    Katrina's husband, Travis Fleming (Fleming), was charged along with defendant and 16-year-old Lamar Hicks. Fleming and Hicks both entered into plea agreements whereby they agreed to testify against defendant and to plead guilty to reduced charges. Fleming (who was defendant's uncle) resided in St. Anne, Illinois (which is near Kankakee), with defendant and other relatives. Hicks, who was a family friend, also resided with them. Fleming testified that, on the morning of November 30, 2007, he traveled with defendant and Hicks from St. Anne to Milwaukee, Wisconsin, where Fleming had a court date. They traveled in a black and gold Ford F-150 pickup truck with Wisconsin license plates. Defendant asked to stop at the Gurnee Mills Toys "R" Us store. They parked near the store, and defendant and Hicks both got out of the truck. Fleming waited in the truck. Several minutes later, Fleming saw defendant and Hicks running. They got into the truck, and defendant told Fleming to "just drive." Fleming drove to I-94 and proceeded toward Milwaukee. At one point Fleming drove through a toll plaza without paying. Fleming saw defendant looking through a black wallet. Defendant pulled a

credit card out of the wallet. Defendant later used the credit card to buy gas for the truck. Fleming testified that, as they drove, defendant threw both the wallet and a gun out the window.

¶ 5 They proceeded to Milwaukee, where Fleming attended his court date. They next drove to Katrina's workplace and to the home of Katrina's sister, Tyshea Saffold. Saffold gave them a printout of directions to defendant's mother's house in Round Lake, Illinois. Defendant, Fleming, and Hicks then traveled to Round Lake and returned home to St. Anne.

¶ 6 Hicks testified that he fell asleep in Fleming's truck after they left for Milwaukee. Defendant woke Hicks. Fleming's truck was parked in the parking lot of a Toys "R" Us store. Defendant asked Hicks to come with him, and they walked toward a gas station. Hicks saw defendant approach a woman seated in a parked car. Defendant grabbed the woman's wallet. Defendant and Hicks then ran. While running, Hicks heard two gunshots. He turned and saw defendant holding a gun. Hicks's account of what transpired after the shooting was consistent with Fleming's account.

¶ 7 Fleming's sister, Rena Fleming, testified that she was defendant's mother. On November 30, 2007, at about 4 p.m., defendant and Fleming visited her at her home in Round Lake. Defendant and Fleming were accompanied by a boy whom they referred to as "Scoobie."

¶ 8 The police obtained a warrant to search the truck registered to Katrina Fleming. They executed the warrant on December 12, 2007. The truck was parked outside a house in St. Anne. A resident gave the police consent to search inside the house. Defendant, Fleming, and Hicks were discovered hiding together near the back of the house. In the truck, police found a set of printed directions from a Milwaukee address to Rena Fleming's home and a box containing several rounds of live ammunition.

¶ 9 In support of the charge that defendant was an armed habitual criminal, the State introduced evidence of defendant's criminal history. The trial court found defendant guilty of, *inter alia*, attempted first degree murder, armed violence, armed robbery, and being an armed habitual criminal.[1] Through counsel, defendant filed a posttrial motion. In addition, defendant filed a *pro se* motion for a new trial, in which he claimed, *inter alia*, that he did not receive the effective assistance of counsel. The trial court denied the motions and continued the case for sentencing, which took place on March 9, 2009.

¶ 10 Defendant filed a *pro se* postconviction petition on October 3, 2011. As pertinent here, defendant claimed that he did not receive the effective assistance of counsel at trial. He alleged as follows:

> "Trial Counsel failed to investigate a call from Travis Fleming after his release from jail. Fleming called counsel to recant his testimony[.] [H]e advised him to contact his own counsel before doing so. Trial counsel did not follow up on this phone call nor did he attempt to contact Mr. Fleming again[.]"

Defendant submitted an unnotarized declaration stating that, after his *pro se* motion for a new trial was denied, he learned from his brother that Fleming "had been trying to contact [defendant's] lawyer to tell the truth." Defendant also alleged that counsel failed to contact and

---

[1]The trial court also found defendant guilty of several other offenses, but, on direct appeal, we vacated or reversed those convictions. *People v. Spivey*, No. 2-09-0278 (2011) (unpublished order under Supreme Court Rule 23).

interview Saffold, who would have testified that defendant was not with Fleming and Hicks when she saw them on the morning of November 30, 2007.

¶ 11    Concluding that defendant's petition stated the gist of a claim of ineffective assistance of counsel, the trial court appointed counsel to represent defendant. The trial court also entered an order permitting defendant to retain a private investigator at Lake County's expense. Counsel did not amend defendant's *pro se* petition. The trial court granted the State's motion to dismiss the petition, and this appeal followed.

¶ 12    Defendant argues on appeal that he made a substantial showing that he was deprived of his constitutional right to the effective assistance of counsel at trial. Defendant maintains that counsel performed deficiently by failing to investigate Fleming's recantation of his testimony against defendant and by failing to call Saffold as a witness. According to defendant, Saffold would have testified that defendant was not present when Fleming and Hicks visited her on November 30, 2007. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In order to show deficient performance, "the defendant must overcome the 'strong presumption' that his counsel's representation fell within the 'wide range of reasonable professional assistance.' " *People v. Franklin*, 135 Ill. 2d 78, 117 (1990) (quoting *Strickland*, 466 U.S. at 694).

¶ 13    Because defendant raised these claims in a proceeding under the Act, a brief summary of the general principles governing such proceedings is in order. In *People v. Hommerson*, 2014 IL 115638, ¶¶ 7-8, our supreme court observed:

> "The Act provides a three-stage process for adjudicating postconviction petitions. At the first stage, the circuit court determines whether the petition is 'frivolous or is patently without merit.' [Citation.] The court makes an independent assessment as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. [Citation.] The court considers the petition's 'substantive virtue' rather than its procedural compliance. [Citation.] If the court determines the petition is frivolous or patently without merit, the court dismisses the petition. [Citation.] If the petition is not dismissed, it will proceed to the second stage.
>
> At the second stage, the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary. [Citation.] The State may then file a motion to dismiss the petition. [Citation.] If the State does not file a motion to dismiss or if the court denies the State's motion, the petition will proceed to the third stage and the court will conduct an evidentiary hearing on the merits of the petition. [Citation.]"

¶ 14    Here, defendant's *pro se* petition proceeded to the second stage, and the trial court appointed counsel for defendant. In its motion to dismiss, the State argued, *inter alia*, that defendant had failed to submit evidence to support various claims set forth in his petition. Section 122-2 of the Act (725 ILCS 5/122-2 (West 2014)) provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." In *People v. Collins*, 202 Ill. 2d 59 (2002), our supreme court examined this requirement, contrasting it with the requirement under section 122-1(b) of

the Act (725 ILCS 5/122-1(b) (West 2000)) that the petition be verified by affidavit. The *Collins* court explained as follows:

> "[U]nder the plain language of the Act, the sworn verification described in section 122-1 serves a purpose wholly distinct from the 'affidavits, records, or other evidence' described in section 122-2. The former, like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. [Citation.] The latter, by contrast, shows that the verified allegations are capable of objective or independent corroboration." *Collins*, 202 Ill. 2d at 67.

¶ 15 Our supreme court has stated that "[a postconviction] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." *People v. Enis*, 194 Ill. 2d 361, 380 (2000) (citing *People v. Johnson*, 183 Ill. 2d 176, 192 (1998), and *People v. Thompkins*, 161 Ill. 2d 148, 163 (1994)); see also *People v. Brown*, 2015 IL App (1st) 122940, ¶ 52. The *Enis* court explained that "[i]n the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." *Enis*, 194 Ill. 2d at 380. The State maintains that, because defendant did not supply affidavits from Fleming and Saffold, his postconviction claims, relating to testimony that they might have given, were properly dismissed. Although the *Enis* court did not equivocate about the necessity for affidavits from proposed witnesses, the court added that the documents attached to the defendant's petition in lieu of an affidavit did not support the defendant's ineffective-assistance-of-counsel claim. According to defendant, the *Enis* court "was willing to consider the claim on its merits without affidavits to support it." We disagree. The *Enis* court expressed two independent reasons for rejecting the defendant's ineffective-assistance-of-counsel claim, either of which would have been sufficient in itself. It is therefore clear that, in the absence of the requisite affidavit, the defendant's claim would not have survived review even if otherwise meritorious.

¶ 16 Defendant notes that, if a defendant seeking postconviction relief explains why no affidavit or other evidentiary material is attached to the petition, the omission is not a ground for dismissal. See, *e.g.*, *People v. Hall*, 217 Ill. 2d 324, 332 (2005). However, the Act provides that the explanation must appear in the petition itself. 725 ILCS 5/122-2 (West 2014). Defendant's petition contained no such explanation. Defendant contends that he was not personally "in a position to explain the failure to obtain *** affidavits [from Fleming and Saffold]." Defendant insists that "it was his assigned post-conviction counsel who failed to explain the omission."[2] However, "[t]he general rule in Illinois is that a client is bound by the acts or omissions of his lawyer-agent. While not an ironclad rule, it is necessary in order for a representative system of litigation to function." *People v. Bowman*, 138 Ill. 2d 131, 141 (1990).

¶ 17 We note the existence of authority holding that the failure to comply with section 122-2 is not a ground for a second-stage dismissal. *People v. Barkes*, 399 Ill. App. 3d 980, 987 (2010) (citing *Hall*, 217 Ill. 2d at 332). However, more recent authority severely undermines *Barkes*. In *People v. Allen*, 2015 IL 113135, ¶ 34, our supreme court held that the failure to notarize a statement styled as an evidentiary affidavit was not a ground for the summary dismissal of a postconviction petition. The court added, however, that, "[w]here a defendant has submitted an

---

[2]Defendant does not assert that this failure constituted a violation of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

unnotarized statement, the State may challenge this nonjurisdictional procedural defect at the second stage of proceedings." *Id.* ¶ 35. Furthermore, the court was careful to note that "[w]here a defendant's postconviction counsel is unable to obtain a properly notarized affidavit, the court may dismiss the petition upon the State's motion." *Id.* If the presence of an unnotarized statement styled as an evidentiary affidavit is a ground for the second-stage dismissal of a postconviction petition, it would be reasonable and logical to permit the dismissal of a petition because of the absence of an affidavit. In both instances, the opportunity to cure the defects is extant during the second-stage proceedings.

¶ 18        For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 19        Affirmed.