# Illinois Official Reports

## Supreme Court

*People v. Dupree*, 2018 IL 122307

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TORRENCE D. DUPREE, Appellant. |
| Docket No. | 122307 |
| Filed | November 1, 2018 |
| Modified upon denial of rehearing | February 28, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Christopher L. Gehrke, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Brian McLeish, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices                        JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Garman, Theis, and Neville concurred in the judgment and opinion.

Justice Thomas specially concurred, with opinion, joined by Justice Kilbride.

Justice Kilbride dissented upon denial of rehearing, without opinion.

**OPINION**

¶ 1      After a Lake County jury trial, defendant Torrence Dupree was convicted of two counts of armed robbery and two counts of aggravated robbery. His convictions were upheld on direct appeal. 2012 IL App (2d) 101247-U. Subsequently, defendant filed a postconviction petition. The petition advanced to the second stage, at which time defendant filed a third-amended petition raising several claims, including a claim that his trial counsel was ineffective for failing to call an "exculpatory witness" to testify at trial. The circuit court dismissed the petition on the State's motion, finding that defendant failed to make a substantial showing that his trial counsel was ineffective.

¶ 2      On appeal, the appellate court affirmed the circuit court's dismissal of the postconviction petition in an unpublished order. 2017 IL App (2d) 141013-U. Unlike the circuit court, however, the appellate court did not consider the ineffective assistance claim on its merits but held that the postconviction petition was properly dismissed, as a matter of law, solely because defendant failed to attach to his petition an affidavit from the proposed witness.

¶ 3      We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). For the reasons that follow, we now hold that, under the facts of this case, defendant's failure to provide an affidavit was not, by itself, fatal to his claim of ineffective assistance of counsel. Nonetheless, we affirm the circuit court's dismissal of defendant's postconviction petition because we, like the circuit court, find that defendant failed to make a substantial showing that his trial counsel was ineffective.

¶ 4                            BACKGROUND

¶ 5      Defendant Torrence Dupree (also known as Teko) was charged with two counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)) and two counts of aggravated robbery (*id.* § 18-5 (now codified at 720 ILCS 5/18-1(b)(1) (West 2016))), in connection with the robbery of Matthew Morrison and Kiernan Collins on February 16, 2010, in Grayslake, Illinois. At a jury trial, evidence established that on the evening of February 16, 2010, Steven Nowell called Matthew Morrison to arrange for the purchase of some marijuana. Morrison, accompanied by a friend, Kiernan Collins, drove to the Grayslake Apartments complex to meet with Nowell. When Nowell met Morrison in the parking lot of the apartment complex, a man armed with a gun and wearing a black, hooded sweatshirt with the hood pulled up over his head pushed his way into the front passenger seat of Morrison's car, demanded money from Morrison and Collins, and removed a backpack from the backseat of Morrison's car before fleeing. Because the gunman wore a hooded sweatshirt, which covered much of his face, and because there was

no physical evidence tying defendant to the robbery, the identification of defendant as the armed robber was the main issue at trial.

¶ 6    Steven Nowell was one of two identification witnesses presented by the State. He testified that on the afternoon of February 16, 2010, he had been with defendant and three other people—Cedric, "Blue," and Kramer—at Kramer's apartment located in the Grayslake Apartments complex. Later, Nowell, Kramer, and Blue left the apartment, picked up Nowell's girlfriend, Kenyana Whiteside, and went to McDonald's to purchase some food. Nowell testified that, when they returned from McDonald's, he and Whiteside went to her apartment, which was also in the Grayslake Apartments complex. Nowell then made a phone call to Morrison to arrange for the purchase of some marijuana.

¶ 7    According to Nowell, after he called Morrison, defendant came to Whiteside's apartment and asked to use her cell phone. Nowell claimed that, when defendant finished using Whiteside's phone, defendant asked him if he was going to get some marijuana from Morrison. Nowell testified that he told defendant "no" because he didn't want to share and because he "knew what [defendant] was capable of." Nowell said defendant accompanied him when he left Whiteside's apartment but he saw defendant walking away from the complex as he continued toward the parking lot to meet with Morrison.

¶ 8    Nowell testified that, when he saw Morrison's car in the parking lot, he got in and noticed a man he did not know (later identified as Kiernan Collins) sitting in the rear passenger seat. Morrison then drove out of the parking lot. Shortly thereafter, Nowell stated, he got a call from Whiteside telling him he forgot his money, so he asked Morrison to go back. Morrison drove back to the parking lot, and Nowell got out. Nowell testified that, when he returned to Morrison's car, a man wearing a hooded sweatshirt and brandishing a gun came up behind him. Nowell said the gunman pushed him into the passenger seat of Morrison's car and then leaned into the car and asked, "Where's the stuff?" The gunman then pointed the gun at him and ordered him to pat down Morrison and Collins and take their cell phones. Nowell admitted taking Morrison's cell phone but said that Morrison and Collins both surrendered their money to the gunman before he could pat them down.

¶ 9    Nowell testified that the gunman pushed him out of the car and a struggle then ensued between Morrison and the gunman as Morrison attempted to start the car. The gunman reached into the backseat, took Morrison's backpack, and then fled from the vehicle as Morrison started the car and drove off. Nowell claimed that, after the robbery, the gunman started to follow him back toward the apartment complex but then jumped into a van and took off. Nowell admitted that he kept Morrison's cell phone and said that he later threw the phone away rather than return it to Morrison.

¶ 10   Nowell further testified that the next day, February 17, 2010, after learning that the police were looking for him, he turned himself in at the Grayslake Police Department. There he was questioned, intermittently, for approximately 2½ hours before he was arrested on charges of aggravated robbery and robbery in relation to this incident. At the police station, Nowell maintained that he was not involved in the robbery, had not set up Morrison to be robbed, and did not know who the gunman was. Later, however, when he learned that he was under arrest for his part in the robbery, he admitted to the police that defendant was the gunman. Nowell also told the jury that he later had accepted a plea deal whereby he pled guilty to reduced charges in exchange for his agreement to testify against defendant.

¶ 11 On cross-examination, Nowell reiterated that he initially told the police he could not identify the gunman and even said that defendant could not have been the gunman because he was too short. However, when he learned that he was being charged, he told the police—as he testified at trial—that, while he never saw the gunman's face, he knew it was defendant because of his voice and the clothes he was wearing. Nowell also testified that between the evening of February 16, when the robbery took place, and February 17, when he turned himself in, defendant called him several times, threatening him not to reveal defendant's identity.

¶ 12 The other identification witness was Kiernan Collins, who had been sitting in the backseat of Morrison's car at the time of the robbery. Collins's rendition of the robbery was similar to Nowell's, except that he cast Nowell more as a willing participant. Collins testified that, when Nowell first entered Morrison's car and they drove out of the parking lot, Nowell claimed he got a call from his girlfriend but Collins never heard the phone ring. Collins testified that they returned to the parking lot and Nowell got out but, almost immediately, Nowell came back to the car, followed closely by the gunman in the hooded sweatshirt. Also, Collins testified that, for much of the time during the robbery, Nowell simply stood outside Morrison's car. The gunman pushed Nowell out of the way, kneeled on the passenger seat, took money from him and Morrison, and then took Morrison's backpack before fleeing.

¶ 13 Collins admitted that he did not get a good look at the gunman because the robbery took place in the evening and it was dark. In addition, the gunman had a hooded sweatshirt pulled tightly around his head, which covered most of his face. Collins also testified that during the robbery, which only lasted a short time, he was mainly focused on the gun and was fearful of looking at the gunman directly. Nonetheless, Collins gave a description of the gunman to police and selected defendant's photo out of a six-man photo array. Collins admitted on cross-examination that he described the gunman as being six feet to six feet, two inches tall and that defendant apparently is only about five feet, eight inches or five feet, nine inches tall. Also, Collins admitted that, when he selected defendant's photo from the array, he told the police that, of the pictures in the array, defendant's picture "most resembled the gunman." Collins estimated that he was 70% sure that defendant was the gunman.

¶ 14 Lastly, Collins testified that on July 23, 2010, which was three days before trial was scheduled to begin, he received a collect phone call from the Lake County jail, where defendant was being held. When Collins learned the call was from "Torrence," he did not accept the call.

¶ 15 No physical evidence was presented at trial. Although latent fingerprints were lifted from the exterior of Morrison's vehicle, they were found either to be unsuitable for comparison or of such poor quality that comparison to defendant's prints was inconclusive. However, the State offered into evidence two recordings of phone calls defendant made from jail to his cousin, Leon Hudson. In one call, defendant told Hudson to "put the word out on the street" that Nowell had been released on probation and that defendant wanted his "head on a platter."

¶ 16 The State also called as a witness Nowell's girlfriend, Kenyana Whiteside. She testified that on the evening of February 16, 2010, she received a phone call from Nowell, who told her that "Teko," whom she knew and identified at trial as defendant, had just robbed somebody.

¶ 17 The only defense witness was defendant's cousin, Leon Hudson, who testified that defendant was between five feet, seven inches and five feet, eight inches tall.

¶ 18        After deliberations, the jury found defendant guilty of the armed robbery and aggravated robbery of Morrison and Collins. Those convictions were upheld on direct appeal. 2012 IL App (2d) 101247-U.

¶ 19        Defendant subsequently filed a postconviction petition in which he raised a number of claims alleging constitutional deprivations. In support of these claims, defendant attached to the petition more than 160 pages of the record. In one of the claims, defendant alleged he received ineffective assistance because trial counsel failed to call Morrison to testify at trial. Defendant did not attach an affidavit from Morrison to his petition. However, in lieu of an affidavit, he submitted three signed, handwritten statements that Morrison had given to the police in the course of their investigation of the robbery, as well as the police summary reports of their questioning of Morrison. These documents showed that Morrison reported the robbery to police shortly after it occurred and, in the course of the investigation, gave the police three different versions of how the robbery occurred.

¶ 20        In the first statement, Morrison said he was robbed by two black men as he was leaving a friend's apartment in the Grayslake Apartments complex. In the second statement, Morrison admitted knowing Nowell and said he went to the Grayslake Apartments to "help him out" but, when Nowell came to his car, he was with a gunman who robbed him. In the third statement, Morrison admitted going to the apartment complex with Kiernan Collins to sell marijuana to Nowell. The rest of this statement was very similar to Collins's testimony about the robbery, except that Morrison stated that he saw Nowell and the gunman walk back to the apartments together, talking and laughing and giving each other "high fives."

¶ 21        Morrison consistently described the gunman to police as "tall," anywhere from six feet up to six feet, three inches in height. Further, Morrison did not identify defendant as the gunman when shown photos in a photo array on at least two occasions. In fact, the police reports show that Morrison selected the photo of someone other than defendant and indicated that he was sure that this other person was the gunman.

¶ 22        Defendant contended that, given the foregoing, it was unreasonable for counsel not to call Morrison. According to defendant, Morrison's statements to police were exculpatory, and by calling Morrison to testify, defendant would have been able to get them before the jury. In addition, defendant maintained he would have been able to question the police about Morrison's statements, something defendant had been prevented from doing at trial because, without Morrison testifying, the statements were inadmissible hearsay. Thus, defendant believed that the documents he attached to his petition constituted substantial evidence that his counsel had been ineffective.

¶ 23        The circuit court dismissed defendant's petition at the second stage of postconviction proceedings, upon the State's motion. Although the circuit court agreed that Morrison's testimony would have been helpful to the defense, the circuit court found that defendant had not made a substantial showing of prejudice resulting from the failure to call Morrison.

¶ 24        On appeal, the appellate court affirmed the circuit court's dismissal of the petition. However, as to the claim of ineffective assistance based on counsel's failure to call Morrison as a witness, the appellate court held that no review on the merits was necessary because defendant failed to attach Morrison's affidavit to his petition. The appellate court held that, without Morrison's affidavit, the petition did not comply with section 122-2 of the

Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 (West 2014)) and was properly dismissed for that reason alone.

¶ 25    We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 26                                    ANALYSIS

¶ 27    The issue in this case is whether defendant's postconviction petition was properly dismissed at the second stage without an evidentiary hearing. Although the petition defendant filed in the circuit court alleged several constitutional deprivations, before this court he has abandoned all claims except his claim of ineffective assistance of counsel based on counsel's failure to call Morrison as a witness at trial. Defendant asks this court to reverse the dismissal of his petition and to remand for third-stage postconviction proceedings on this claim.

¶ 28    The Act (725 ILCS 5/121-1 *et seq.* (West 2014)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444 (2002). If the postconviction petition is not dismissed at the first stage as frivolous or patently without merit, it advances to the second stage. 725 ILCS 5/122-5 (West 2014). At the second stage, the State may either answer the petition or move to dismiss it. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the State moves to dismiss the petition, the circuit court must decide whether to grant the State's motion or advance the petition to the third stage for an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). A postconviction petitioner is entitled to an evidentiary hearing only when the allegations in the petition supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2014)) make a substantial showing of a deprivation of rights under either the United States or Illinois Constitutions or both. *Pitsonbarger*, 205 Ill. 2d at 455; *Domagala*, 2013 IL 113688, ¶ 33.

¶ 29    At the second stage, "[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The Act contemplates that such determinations will be made at the evidentiary stage, not the dismissal stage, of the litigation. *Id.* In addition, at the second stage, the circuit court examines a postconviction petition to determine its legal sufficiency, and any allegations not affirmatively refuted by the record must be taken as true. *Domagala*, 2013 IL 113688, ¶ 35. Thus, the substantial showing of a constitutional violation that must be made at the second stage is "a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *Id.* Where, as here, the circuit court dismisses a defendant's postconviction petition at the second stage after finding no substantial showing of a constitutional deprivation has been made, review of the dismissal is *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 30    In this case, the appellate court affirmed the circuit court's dismissal of defendant's petition but refused to consider the ineffectiveness claim at issue here on its merits. Instead, the appellate court ruled, as a matter of law, that defendant's petition was not in conformance with the requirements of section 122-2 of the Act because defendant did not attach to his postconviction petition an affidavit from the proposed witness (Morrison) and the lack of an affidavit was fatal to his claim of ineffective assistance of counsel. We disagree.

¶ 31 First, we find no statutory support for the appellate court's holding. Section 122-2 of the Act provides that a postconviction petitioner must "clearly set forth the respects in which petitioner's constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2014). It is axiomatic that, when construing a statute, the primary objective is to ascertain and give effect to the intent of the legislature. *In re Detention of Powell*, 217 Ill. 2d 123 (2005). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009). Moreover, when interpreting a statute, a court must not depart from the plain language or read into it exceptions, limitations, or conditions that the legislature did not express. *People v. Shinaul*, 2017 IL 120162, ¶ 17.

¶ 32 Construing section 122-2 of the Act according to its plain language, the Act permits a petitioner to make a substantial showing of a constitutional deprivation using any suitable evidence and does not limit a petitioner solely to the use of affidavits. The provision unambiguously provides that an allegation of a constitutional violation in a postconviction petition must be supported by "affidavits, records, or other evidence." The conjunction "or" signifies that the things that it connects are alternatives or choices. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/or (last visited Sept. 7, 2018). Nowhere does the language of the statute limit a postconviction petitioner to the use of affidavits to advance a claim of ineffective assistance of counsel or, for that matter, any alleged constitutional deprivation raised in a postconviction petition. The only requirement is that the supporting evidence sufficiently demonstrate the alleged constitutional deprivation.

¶ 33 The real problem here is that the appellate court misconstrued defendant's ineffectiveness claim. The appellate court held that, in all cases where a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to investigate and call a witness, the claim "must" be supported by an affidavit from the proposed witness. 2017 IL App (2d) 141013-U, ¶ 54. The State agrees and, in support, cites four of our opinions: *People v. Enis*, 194 Ill. 2d 361 (2000), *People v. Johnson*, 183 Ill. 2d 176 (1998), *People v. Guest*, 166 Ill. 2d 381 (1995), and *People v. Thompkins*, 161 Ill. 2d 148 (1994). We find, however, that reliance on these cases is misplaced. Not only are these cases factually distinguishable from the case at bar, they do not stand for the proposition that the State espouses.

¶ 34 In none of the cases cited by the State did this court create a bright-line rule or refuse to consider whether a postconviction petitioner had made a substantial showing of ineffective assistance of counsel simply because no affidavit from the proposed witness was attached to the petition. Rather, this court has always held that dismissal is proper when the record or other evidence attached to the petition does not support the petitioner's claim. In cases where a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to call a witness, an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary "substantial showing" to support a claim of ineffective assistance. It may be true that in most cases where this type of claim is raised, without an affidavit, there can be no way to assess whether the proposed witness could have provided evidence that would have been helpful to the defense. However, to interpret our case law as requiring an affidavit in all instances where this type of claim is raised is simply incorrect.

¶ 35    For example, in *Thompkins*, when considering the defendant's appeal from the second-stage dismissal of his postconviction petition, we addressed his claim that his defense counsel had been ineffective for failing to interview or call as a witness a codefendant, Pamela. An affidavit from Pamela was not attached to the petition. However, the defendant stated in his own affidavit that Pamela had recanted a statement she had given to police in which she had implicated him. Johnson apparently believed that the recantation was evidence that Pamela would have provided favorable testimony if she had been called as a defense witness. *Thompkins*, 161 Ill. 2d at 160-61. When assessing this claim, we quoted *Strickland v. Washington*, 466 U.S. 668 (1984), stating: " 'In any ineffectiveness case, a particular decision not to investigate [or call someone as a witness] must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " *Thompkins*, 161 Ill. 2d at 161 (quoting *Strickland*, 466 U.S. at 691). We then reviewed the record and discovered that Pamela had recanted her recantation and, therefore, the record did not support the defendant's claim that Pamela would have provided favorable testimony. Accordingly, we affirmed the dismissal of this claim, finding that the defendant failed to make a substantial showing that his counsel was ineffective for failing to call Pamela. *Id.* at 162-63.

¶ 36    A second claim of ineffective assistance of counsel in *Thompkins* was based on counsel's alleged failure to investigate two potential alibi witnesses, Tina Pitts and Karen Hayes. Again, no affidavits from these women were attached to the petition, but the defendant claimed in his own affidavit that he had been with these women on the day of the murder and they could have provided helpful alibi testimony to counter a portion of the prosecution's case. We held that dismissal of the claim was proper, finding that the defendant's failure to submit the affidavits of these two women precluded us from considering whether counsel had been ineffective. *Id.* at 163. However, what precluded our review was the fact that there was nothing in the record to support the defendant's assertion that counsel had not spoken to these women or that the women, if called at trial, would have testified that they were with Thompkins at the pertinent time. Moreover, the defendant's assertion that he was with these women could not be taken as true because it ran counter to evidence that was presented at trial. Thus, without affidavits from these two women, it was impossible to determine whether the failure to call these proposed witnesses was evidence of ineffective assistance or simply trial strategy.

¶ 37    The same was true in *Guest*. *Guest* also involved a second-stage dismissal of a postconviction petition. In that case, one of the claims in the defendant's petition was that counsel had been ineffective because he failed to investigate five alibi witnesses. The defendant did not provide affidavits from three of the proposed witnesses but averred in his own affidavit that, before trial, he gave counsel the names of these alibi witnesses yet counsel never interviewed them or called them to testify. We found this claim was properly dismissed because defendant failed to introduce affidavits from those individuals stating what they would have testified. *Guest*, 166 Ill. 2d at 401-02. The key point, however, was not the lack of affidavits but that, without their affidavits, it was impossible to determine whether the proposed witnesses could have provided any information or testimony favorable to defendant. *Id.* at 402. As *Guest* makes clear, there can be no substantial showing of ineffective assistance of counsel for failure to investigate or call a witness if there is no evidence that the exculpatory evidence actually exists.

¶ 38    Similarly, in *Johnson*, the defendant argued in his postconviction petition that his trial counsel was ineffective for failing to present the testimony of a proposed alibi witness. The

- 8 -

proposed witness had died subsequent to the defendant's trial, and therefore, the defendant was unable to obtain his affidavit. Instead, the defendant attached to his petition the affidavit of the proposed witness's sister, who averred that her brother had been with her on the day of the murder and, therefore, would have testified to the same facts that she testified to at trial. *Johnson*, 183 Ill. 2d at 192. We cited *Guest* for the proposition that an affidavit from the individual who would have testified is necessary to support a claim of ineffectiveness based on the failure to investigate and call a witness. *Id.* (citing *Guest*, 166 Ill. 2d at 402). However, we then considered whether the sister's affidavit—provided in lieu of the proposed witness's affidavit—supported the claim. We found it to be insufficient because it showed that the proposed witness's testimony, at best, would have been cumulative and therefore did not constitute substantial evidence of ineffective assistance. *Id.*

¶ 39    Finally, in *Enis*, the defendant claimed his postconviction petition should not have been dismissed because he made a substantial showing that his counsel was ineffective for failing to investigate or present testimony of several proposed witnesses. In some instances, no affidavit of the proposed witness was attached to the petition. *Enis*, 194 Ill. 2d at 378-80. Citing *Johnson* and *Thompkins*, we reiterated that such claims must be supported by an affidavit from the proposed witness because, in the absence of an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant. *Id.* at 380 (citing *Johnson*, 183 Ill. 2d at 192, and *Thompkins*, 161 Ill. 2d at 163). Even though we stated that, without an affidavit, further review of the claim was unnecessary, we still considered, as to each proposed witness, whether the record or any evidence presented in lieu of an affidavit sufficiently demonstrated that counsel had been ineffective. Finding none, we rejected the claim on its merits. *Id.*

¶ 40    In all of the cases cited above, the claims of ineffective assistance were based on counsel's failure to discover and introduce new witness testimony, *i.e.*, *new evidence*, which the defendants believed would have altered the outcome of their trials. Because the proposed witnesses that trial counsel allegedly failed to investigate or call to testify were generally the only source of this new evidence, without their affidavits, there was no proof that such evidence actually existed or that it would have been helpful to the defense. Where proof other than an affidavit was offered to show what the proposed witness would have testified, we considered that evidence and determined it was insufficient to make a substantial showing of ineffective assistance. Thus, our case law demonstrates that, when a defendant raises a claim of ineffective assistance of counsel in a postconviction petition based on counsel's failure to investigate or call a witness to testify, the petition may properly be dismissed at the second stage—whether an affidavit is attached or not—if the evidence presented in support of the claim does not make a substantial showing that counsel was ineffective. As such, our case law is in accord with the plain language of section 122-2 of the Act, which provides that allegations in a postconviction petition may be supported by "affidavits, records, or other evidence."

¶ 41    Critically, under the facts of the case now before us, an affidavit from the proposed witness is not necessary to advance defendant's claim of ineffectiveness. In this case, defendant contends that his counsel was ineffective because the failure to call Morrison denied him the opportunity to bring exculpatory evidence to the attention of the jury. In support of this allegation, defendant attached three signed statements from Morrison. This documentation showed that Morrison had not identified defendant as the gunman and, instead, had identified

- 9 -

someone else. Defendant alleged that, by not calling Morrison to the stand, he was prevented from getting this evidence to the jury.

¶ 42    Thus, in this case, unlike the typical case, defendant did not hope to introduce new evidence that could only be verified by an affidavit from the proposed witness. Instead, defendant wanted to introduce evidence that already existed: Morrison's statements to the police, Morrison's failure to identify defendant from photo lineups, and Morrison's identification of someone other than defendant as the gunman. All of this evidence was inadmissible hearsay unless Morrison testified. Under these circumstances, anything that Morrison might say if called to testify at an evidentiary hearing is irrelevant to defendant's claim. Consequently, under the facts of this case, an affidavit from Morrison was not necessary, and it was appropriate for defendant to support the allegation of ineffectiveness with portions of the record and exhibits.

¶ 43    Given our finding that the absence of an affidavit from Morrison was not, by itself, a sufficient basis for dismissing defendant's postconviction petition, we find that the appellate court erred in so holding. Therefore, we must now consider whether defendant's petition was properly dismissed because he failed to make a substantial showing that his counsel was ineffective for failing to call Morrison as a witness.

¶ 44    Claims of ineffective assistance of counsel are judged under the two-pronged standard set forth in *Strickland* and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under this standard, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. To satisfy the deficient performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate "that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment" and, also, must overcome the strong presumption that any challenged action or inaction may have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999); *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997). This is a high bar to clear since matters of trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418 (1999); *People v. Smith*, 195 Ill. 2d 179, 188 (2000). In addition, even when a defendant can show deficient performance, the second prong requires the defendant to show that he was prejudiced as a result. That is, a defendant must show that counsel's deficiency was so serious that it deprived him of a fair trial. *Smith*, 195 Ill. 2d at 188.

¶ 45    Defendant contends that he made a substantial showing of ineffective assistance. He argues that the State's case against him was weak because no physical evidence linked him to the offense, he never made any statements incriminating himself, and the identification testimony provided by the State's main witnesses, Collins and Nowell, was not convincing. In light of the above, defendant concludes that trial counsel was deficient for not calling Morrison and, thereby, introducing Morrison's exculpatory statements to the police. Defendant further asserts that, if Morrison had been called as a witness, there is a reasonable probability that the outcome of his trial would have been different. He concludes, therefore, that he made a substantial showing that he was prejudiced by the failure to call Morrison.

¶ 46    We believe that defendant overstates the value of Morrison's statements to the police. While it is true that the materials defendant attached to his petition establish that Morrison did

not identify defendant as the gunman and selected someone other than defendant from a photo array, believing him to be the gunman, the materials also show that Morrison's description of the gunman was substantially similar to Collins's description. The jury was well aware of the fact Collins's identification of defendant was uncertain because of the conditions that existed at the time of the robbery—the robbery was at night, the gunman was wearing a hooded sweatshirt tightly pulled over his head, and his focus was on the gun, which was pointed at them during the brief time that the robbery took place. In addition to these factors, Morrison was also concentrating on starting the car and escaping from the situation. These are all reasons why Morrison's identification of someone other than defendant could be called into question.

¶ 47    We also disagree that the identification evidence, as a whole, was weak. Although Collins was only 70% sure of his identification of defendant, Nowell unequivocally identified defendant as the gunman. The jury could have relied heavily on his testimony because the evidence strongly suggested that Nowell and defendant had planned the robbery together. In addition, other evidence tended to corroborate Nowell's identification of defendant. For example, Whiteside testified that Nowell called her shortly after the robbery and told her that "Teko robbed somebody." This testimony also dispelled the notion that Nowell's identification of defendant was fabricated later at the police station.

¶ 48    Even if we were to agree with defendant that counsel's failure to call Morrison was some evidence of deficient performance, we do not believe that defendant can overcome the presumption that counsel's decision was the product of sound trial strategy. As noted above, to satisfy the deficient performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate "that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment" and, also, must overcome the strong presumption that any challenged action or inaction may have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93.

¶ 49    As the State points out in its brief, there are a number of reasons why defense counsel might have chosen not to call Morrison. Morrison gave the police three different statements about the manner in which the robbery occurred. These statements, as well as other materials defendant attached to his postconviction petition, showed that Morrison believed that Nowell was an active participant in the robbery. Morrison told the police that, after the robbery as he drove away from the parking lot, he saw the gunman and Nowell walking back to Nowell's apartment, laughing and giving each other "high fives." Morrison's statements to the police, if presented to the jury, could have solidified Nowell's role in the robbery and given his identification of defendant even more credibility.

¶ 50    Also, Morrison told police that during the robbery Nowell told him to cooperate because the gunman "had just gotten out of jail." Apparently, prior to the robbery, defendant had, in fact, been recently released from jail. Defense counsel might not have wanted to call Morrison and risk this information getting to the jury.

¶ 51    Defendant argues that it was important to get Morrison's statements to the police introduced at trial because, in those statements, he consistently described the armed robber as being between six feet, one inch and six feet, three inches tall, while defendant is apparently only five feet, eight inches or five feet, nine inches in height. However, both Collins and Nowell described the gunman as being over six feet tall, and the record shows that defense counsel was able to press this point with the jury by questioning them and other witnesses at

length about this discrepancy in height. In fact, defense counsel was able to bring out Morrison's description of the gunman's height during his cross-examination of Officer Joe Manges of the Grayslake Police Department. Thus, even if Morrison's statements to the police had been introduced at trial, this evidence would have simply corroborated the other witnesses on this point. Accordingly, this evidence would have been cumulative. Trial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence. *People v. Henderson*, 171 Ill. 2d 124, 155 (1996); *People v. Brisbon*, 164 Ill. 2d 236, 248 (1995).

¶ 52                                                     CONCLUSION

¶ 53    For the reasons stated above, we find that defendant has not presented substantial evidence that he received ineffective assistance of counsel at his trial. Accordingly, we affirm the dismissal of defendant's postconviction petition at the second stage, without an evidentiary hearing.

¶ 54    Affirmed.

¶ 55    JUSTICE THOMAS, specially concurring:

¶ 56    I agree with my colleagues in the majority that defendant's postconviction petition was properly dismissed, and therefore I concur in the judgment. Unlike the majority, however, I believe that the appellate court correctly upheld the dismissal on the basis of defendant's failure to provide an affidavit from Morrison, and therefore I cannot join the majority opinion.

¶ 57    The majority asserts that this court never "create[d] a bright-line rule or refuse[d] to consider whether a postconviction petitioner had made a substantial showing of ineffective assistance of counsel simply because no affidavit from the proposed witness was attached to the petition." *Supra* ¶ 34. In fact, that is *exactly* what this court has done. The majority claims that what this court has "always held" instead is that, when a petitioner raises a claim of ineffective assistance of counsel for failure to call a witness, an affidavit will be required only in those cases where an affidavit is necessary for the petitioner to make the necessary "substantial showing" to support a claim of ineffective assistance. *Supra* ¶ 34. Our cases say nothing of the kind. The majority cites not a single case that says this and simply ignores what this court's cases actually say. One would think that, if this court has "always held" something, it would be possible to find at least one case that actually says that thing.

¶ 58    The majority relies on four decisions—*Enis*, *Johnson*, *Guest*, and *Thompkins*—to make its case that this court has not created a bright-line rule that an affidavit from a potential witness is required to support a postconviction claim that counsel was ineffective for failing to call that witness and that this court has instead "always held" only that such an affidavit *may* be required. Here is what those cases actually say. In *Enis*, 194 Ill. 2d at 380, this court stated:

> "A claim that trial counsel failed to investigate and call a witness *must* be supported by an affidavit from the proposed witness. [Citations.] In the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." (Emphasis added.)

*Enis* also referred to affidavits as being a necessity. See *id.* at 382-83 ("Defendant has failed to support this claim with the necessary affidavit from Burton."), 387 ("Defendant has failed to support this claim with the necessary affidavit from Norvell.").

¶ 59 In *Johnson*, 183 Ill. 2d at 192, this court stated:

"In order to support a claim of failure to investigate and call a witness, a defendant *must* tender an affidavit from the individual who would have testified. Without such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided any information or testimony favorable to defendant. [Citations.] Because defendant has failed to provide an affidavit from Dennis Taylor, *further consideration of his purported testimony is unnecessary*." (Emphases added.)

¶ 60 In *Guest*, 166 Ill. 2d at 402, this court stated:

"To support a claim of failure to investigate and call witnesses, a defendant *must* introduce affidavits from those individuals who would have testified. Without affidavits, this court cannot determine whether these witnesses could have provided any information or testimony favorable to defendant. [Citation.] Defendant has provided no affidavits from Kathy Wilson, Dorothy Johnson, or Albert Johnson. *Because defendant has failed to submit affidavits from these proposed witnesses, we will not consider them further*." (Emphases added.)

¶ 61 Finally, in *Thompkins*, 161 Ill. 2d at 163, this court stated:

"The defendant next contends that defense counsel was ineffective because he did not investigate two potential alibi witnesses, Tina Pitts and Karen Hayes. In the affidavit the defendant submitted with his post-conviction petition, he states that he was with those two women during the period when other evidence showed that he was meeting with Keith Culbreath prior to the offenses. The defendant believes that Pitts and Hayes therefore could have provided helpful alibi testimony to counter a portion of the prosecution's case. The defendant has failed to submit affidavits from Pitts and Hayes themselves, however, *and thus we are precluded from considering this issue further*." (Emphasis added.)

And these are the cases the majority cites in *support* of its position. If this is what it means for cases to support an argument, one wonders what it would mean for them to soundly defeat it.

¶ 62 The above cases demonstrate that, contrary to the majority's position, this court has *always* held that an affidavit is *required* to support a postconviction claim of counsel's failure to investigate and call a particular witness. This court has *never* held only that an affidavit *may* be necessary. See *supra* ¶ 34. The majority claims that this court never created a "bright-line rule" that an affidavit is required. *Supra* ¶ 34. If words like "must" and "necessary" and phrases like "thus we are precluded from considering the issue further" do not create a bright-line rule, it is difficult to imagine what a bright-line rule would look like. This court has never stated that an affidavit "may" be required, is "usually" required, or is "often" required. Rather, this court has clearly and unequivocally stated that an affidavit *must* be provided, that such an affidavit is *necessary*, and that without such an affidavit the court is *precluded* from considering the issue further. And the rule has always been stated in general—rather than case-specific—terms. The court has spoken about what a defendant *must* do when he or she raises this type of claim. Indeed, this court has been so strict about the affidavit rule that it enforced it even with respect to a potential witness who was dead and thus could not possibly provide an affidavit. See

- 13 -

*Johnson*, 183 Ill. 2d at 191-92. This court has also held that an affidavit that lacks a signature provides no support for a petition's allegations. See *Guest*, 166 Ill. 2d at 402. The majority has not cited a single case in which this court held that a postconviction claim of ineffective assistance for failure to call a witness can survive second-stage proceedings without an affidavit from the proposed witness.

¶ 63    The majority claims that, despite what the above cases say, this court has been willing to consider whether supporting material that a defendant supplied in lieu of an affidavit was sufficient to support a postconviction claim of failure to call a particular witness. Once again, the majority is able to make this claim only by failing to disclose what our cases actually say. When this court "considered" material provided in lieu of an affidavit from the witness, the court did so on an "even if" basis. In *Johnson*, for instance, this court clearly set forth the affidavit requirement and stated that further consideration of the witness's purported testimony was unnecessary because no affidavit was provided. *Johnson*, 183 Ill. 2d at 192. The court then stated that, "*[e]ven assuming defendant's allegation was sufficiently supported*, Dennis's testimony was apparently to be cumulative." (Emphasis added.) *Id.* Similarly, in *Enis*, this court stated the affidavit requirement in no uncertain terms. *Enis*, 194 Ill. 2d at 380. With respect to potential witness Moselle Williams, this court held that the defendant had failed to support the claim with an affidavit and then stated that, "*[e]ven if we considered* the February 4, 1998, investigation note, in lieu of an affidavit, defendant has failed to demonstrate that there is a reasonable probability that the outcome of defendant's trial would have been different had counsel presented Williams' testimony." (Emphasis added.) *Id.* Similarly, with respect to witness Roy Norvell, the court stated that the defendant had failed to support his claim with the "necessary" affidavit. *Id.* at 387. The court then listed the documents that the defendant had supplied in lieu of an affidavit and stated, "*[e]ven if we consider* these documents in lieu of an affidavit from Norvell, none of the documents support defendant's contention that Norvell's testimony would have rebutted Burk's testimony." (Emphasis added.) *Id.* If what the majority says is correct, then there would have been no reason to word the analysis in this manner. The court would have simply considered the material that the defendant provided. Instead, the court rejected the claims based on the lack of an affidavit and then said what the result would be "even if" it considered the material that the defendant attached. This point, more so than any other, conclusively establishes the error of the majority's analysis. The majority cannot (and therefore does not) explain this court's use of the "even if" analysis in these cases.

¶ 64    In *People v. Spivey*, 2017 IL App (2d) 140941, the defendant interpreted *Enis* in the manner that the majority does today. The defendant argued that *Enis* " 'was willing to consider the claim on its merits without affidavits to support it.' " *Id.* ¶ 15. The appellate court correctly rejected this argument. The court noted that this court "did not equivocate about the necessity for affidavits from proposed witnesses" and viewed the lack of an affidavit as an independent reason for rejecting the defendant's ineffective assistance claim. *Id.* Thus, the appellate court correctly observed that, "in the absence of the requisite affidavit, [Enis's] claim would not have survived even if meritorious." *Id.*

¶ 65    The Seventh Circuit has similarly read Illinois case law as imposing an affidavit requirement. In *Jones v. Calloway*, 842 F.3d 454 (7th Cir. 2016), the defendant argued in a *habeas* proceeding that his attorney had been ineffective for failing to call his codefendant as a witness. The Seventh Circuit noted that the defendant had raised this same claim in an Illinois

- 14 -

postconviction proceeding. The trial court had dismissed the petition, and the appellate court affirmed on the basis that the defendant had failed to attach an affidavit from his codefendant. *Id.* at 459. The appellate court held that the defendant was required to attach an affidavit from his codefendant stating both that he was willing to testify and what the subject of the testimony would have been. *Id.* at 461. The appellate court stated that the failure to attach the affidavit was alone sufficient to justify the dismissal but went on to explain that defendant could not satisfy the *Strickland* test in any event. *Id.* at 459. The first question that the federal court had to answer was whether the state court had found the *Strickland* claim to be procedurally defaulted. The court held that it had been, as the Illinois Appellate Court held that the lack of an affidavit alone justified the dismissal. The Seventh Circuit explained that "Illinois courts regularly enforce the affidavit rule." *Id.* at 461. Thus, it appears that the Illinois Supreme Court is the only court that does not believe that the Illinois Supreme Court's cases mean what they say.

¶ 66 The majority tries to argue that this case is somehow different from other ones in which this court has required an affidavit. The majority claims that defendant simply wanted to introduce evidence that already existed (Morrison's statements to the police, his failure to identify defendant in a photo lineup, and his identification of someone else as the gunman) and that Morrison's testimony is *irrelevant* to defendant's claim. That is certainly interesting, given that defendant pleaded in his postconviction petition that, "[i]n the case at bar, there was no reasonable strategic purpose in failing to call Matt Morrison as a witness. *Without the exculpatory testimony of Morrison*, the jury was left only with the State's version of events." (Emphasis added.) And, again, we do not have an affidavit from Morrison, so we do not know if he was willing to testify and what his testimony would have been. The majority claims that the "real problem here is that the appellate court misconstrued defendant's ineffectiveness claim." *Supra* ¶ 33. Defendant's petition proves that it is actually the majority that has misconstrued defendant's ineffectiveness claim.

¶ 67 There is in fact nothing remarkable about the claim before us, and it is strikingly similar to a claim for which we required an affidavit in *Enis*. With respect to prospective witness Roy Norvell, the defendant argued that, if called, Norvell would testify that he saw a man wearing white sunglasses in the victim's parking lot and that he had identified someone other than the defendant as the man wearing the white sunglasses. *Enis*, 194 Ill. 2d at 386-87. The defendant did not provide an affidavit from Norvell but instead relied on police reports and interviews with Norvell. *Id.* at 387. These documents were sufficient for this court to review the substance of the defendant's claim, but the court *still* rejected the claim on the basis that the defendant had "failed to support this claim with the necessary affidavit from Norvell." *Id.* Thus, the present case is on all fours with *Enis*, and if an affidavit was necessary in *Enis*, it is also necessary here. Given the similarity between the present case and *Enis*, it will be impossible for the appellate court to discern when an affidavit is required and when it is not, and this problem is a direct result of the majority's refusal to acknowledge what our cases actually say.

¶ 68 The majority claims that its holding that an affidavit is not always required to support this type of claim is in accord with the plain language of the statute, which merely requires that a petition have attached to it " 'affidavits, records, or other evidence' " supporting its allegations. *Supra* ¶ 40. The majority claims that there is "no statutory support for the appellate court's holding." *Supra* ¶ 31. The problem with this statement is that *this court* has interpreted the statute as meaning that, when the claim raised in a postconviction petition is ineffective

- 15 -

assistance of counsel based on the failure to call a particular witness, the supporting document *must* be an affidavit. The appellate court is not free to ignore this court's holdings. The statute generically lists what kinds of supporting documents may be used in support of postconviction claims, but this court has clarified which type must be used in support of a particular postconviction claim and has explained why this is so. When this court has interpreted a statute, that interpretation *becomes part of the statute itself* unless and until the legislature amends it to the contrary. *People v. Woodard*, 175 Ill. 2d 435, 444 (1997). Thus, this court's clear unequivocal statement in cases such as *Guest*, *Enis*, and *Johnson* that the type of supporting documentation in cases such as this must be an affidavit is now considered part of the statute itself. This court has consistently expressed that rule for decades, and the legislature has not amended the statute in response. The majority clearly errs in ignoring what our cases actually say and treating the issue before us as one of first impression.

¶ 69      If the majority believes this court's cases are in error, it needs to overrule them. If it believes that the court made a mistake, then it should own the mistake rather than claiming that our cases say something other than what they clearly say. However, this would require a discussion of why departure from *stare decisis* is appropriate, which may be difficult. *Stare decisis* considerations are at their apex in matters of statutory construction. *People v. Espinoza*, 2015 IL 118218, ¶ 29. This court has construed the statute as requiring an affidavit when the claim is ineffective assistance for failure to call a particular witness. This interpretation has been clearly stated and consistently applied by this court and the appellate court for decades. Likely realizing the difficulty it faces here, the majority instead tries to argue that our cases say something other than what they actually do and criticizes the appellate court for failing to discern the hidden meaning in those cases. I cannot go along with such an analysis. The appellate court's holding has a sound basis in this court's case law, and I would affirm its decision for the reasons stated in its opinion.

¶ 70      JUSTICE KILBRIDE joins in this special concurrence.