NOTICE

Decision filed 09/03/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170183-U

NO. 5-17-0183

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-CF-1049 |
| | ) | |
| RONNIE J. GULLY JR., | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant failed to make a substantial showing of a constitutional violation, the circuit court properly dismissed the defendant's postconviction petition, and where any argument to the contrary would lack merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    Pursuant to a fully-negotiated plea agreement with the State, the defendant, Ronnie J. Gully Jr., pleaded guilty to first-degree murder and two other felony offenses, and the court sentenced him to consecutive terms of imprisonment and terms of mandatory supervised release (MSR). The defendant did not appeal from the conviction. He did file a timely *pro se* petition for postconviction relief, which was eventually supplemented by a second amended postconviction petition prepared by appointed postconviction counsel. On motion of the State, the circuit court dismissed the second amended petition. From that judgment, the defendant now appeals.

1

¶ 3    The defendant's court-appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis it has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD provided the defendant with a copy of its *Finley* motion and memorandum. This court gave the defendant ample opportunity to file a written response to OSAD's motion, or a memorandum, brief, etc., explaining why his appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and accompanying memorandum, as well as the entire record on appeal, and has determined that this appeal does indeed lack merit.

¶ 4                                   BACKGROUND

¶ 5    During 2013 and 2014, the State charged the defendant with various felony offenses, in the instant cause and in other St. Clair County criminal cases. In the instant cause, the charges included the intentional first-degree murder of George Tolliver with a firearm in July 2013. On July 15, 2015, the State filed in the instant cause a new count charging the defendant with the intentional first-degree murder of George Tolliver, but without mention of a firearm. That same day, the defendant, his appointed attorney, and an assistant state's attorney appeared before the circuit court and announced that the parties had reached a plea agreement disposing of all of those 2013 and 2014 criminal cases. Under the terms of the parties' agreement, the defendant would plead guilty to the newly-filed count of first-degree murder, and for that offense he would be sentenced to imprisonment for 20 years and MSR for 3 years. In addition, the defendant would plead guilty to harassment of a witness in a 2014 case and would be sentenced to imprisonment for three years and MSR for two years, and he would plead guilty to aggravated battery to a peace officer in another 2014 case and would be sentenced to imprisonment for three years and MSR for two years.

2

He would serve 100%, 50%, and 50%, respectively, of those three prison sentences, and all three would be served consecutively. All other counts in the instant cause and in the defendant's other cases would be dismissed. The court told the defendant that if he pleaded guilty, it would adopt the parties' agreement.

¶ 6 Through counsel, the defendant waived his right to a preliminary hearing on the newly-filed first-degree murder count. The court admonished the defendant as to the nature of the newly-filed murder charge and the possible penalties, namely, imprisonment for 20 to 60 years followed by MSR for 3 years, and the defendant indicated his understanding. The court also admonished the defendant as to the nature of the two other charges to which he would plead guilty under the parties' agreement—that is, harassment of a witness and aggravated battery to a peace officer— and their possible penalties, and the defendant indicated his understanding. In addition, the court admonished the defendant as to the nature of all the other charges against him—that is, the charges that were to be dismissed under the plea agreement—and their possible penalties. The court admonished the defendant of his right to persist in a plea of not guilty and his right to choose a trial by jury or by the judge alone, and the defendant indicated his understanding. The court admonished the defendant as to his rights at trial, including the right to cross-examine the State's witnesses through his attorney, the right to subpoena and to call witnesses, and the right to testify or not to testify, as he chose, and the defendant indicated his understanding. The court admonished the defendant as to the State's burden of proving guilty beyond a reasonable doubt, and the defendant indicated his understanding. Finally, the court admonished the defendant that by pleading guilty to some charges, he was giving up his right to contest those charges, giving up his right to a trial, and giving up the right to cross-examine the State's witnesses, and the defendant indicated his understanding. In answer to the court's queries, the defendant indicated that nobody

3

had promised him anything outside the terms of the plea agreement, and nobody had threatened him or his family, in order to cause him to plead guilty. The State provided factual bases for the defendant's three guilty pleas. The defendant pleaded guilty to each of the three charges to which he had agreed to plead guilty.

¶ 7 The court accepted each of the defendant's guilty pleas and found a factual basis for it. The court explicitly found that the defendant understood the charges and possible penalties, his trial rights, and the waiver of rights that is implicit in a guilty plea, and also found that "no improper promises or inducements" had been made and that the guilty pleas were voluntary. The parties waived the preparation of a presentence investigation report, and the court indicated that it had been provided with a criminal history for the defendant. The court imposed the agreed-upon sentences, including a 20-year prison term and a 3-year MSR term for the newly-filed count of first-degree murder. The court then admonished the defendant as to his appeal rights, including the necessity for a motion to withdraw the guilty pleas.

¶ 8 The defendant did not file a motion to withdraw his guilty pleas. He did not appeal from the judgment of conviction.

¶ 9 On February 18, 2016, the defendant filed a *pro se* petition for postconviction relief. The circuit court ordered the petition docketed for further consideration and appointed postconviction counsel for the defendant. (Oddly, the State shortly thereafter filed a motion to dismiss the *pro se* petition.) In July 2016, the defendant filed, through appointed postconviction counsel, an amended postconviction petition. In November 2016, the defendant, though still represented by counsel, filed a *pro se* "second amended petition for postconviction relief." In January 2017, the defendant filed through postconviction counsel another "second amended petition for postconviction relief."

4

The second amended petition filed through counsel was essentially the same as the second amended petition filed by the defendant *pro se* in November 2016.

¶ 10    In the second amended petition of January 2017, the defendant claimed (1) his first-degree murder sentence of imprisonment for 20 years plus MSR for 3 years ran afoul of the constitutional prohibition against double jeopardy, since it required him "in effect" to serve two sentences—a prison sentence and an MSR sentence—for a single crime, and furthermore the sentence violated his rights to due process and equal protection since the MSR term was imposed without his agreement and required him to serve more than 100% of his sentence; (2) his plea agreement was breached, and his right to due process was violated, when a requirement that he register as a convicted first-degree murderer pursuant to the Murderer and Violent Offender Against Youth Registration Act (Violent Offender Act) (730 ILCS 154/1 *et seq.* (West 2012)) was added to his sentence even though plea counsel did not inform him of the registration requirement, the circuit court did not admonish him about it, and he did not agree to it; (3) the truth-in-sentencing law requiring the defendant to serve 100% of his prison sentence was unconstitutional, since it violated the Illinois Constitution's single-subject rule, the federal and state right to due process, and the principle of separation of powers; and (4) he was deprived of his constitutional right to the effective assistance of counsel where counsel failed to inform him that a 3-year MSR term and a registration requirement under the Violent Offender Act would be added to his agreed-upon 20-year prison sentence, and where counsel failed to inform him, or to argue to the circuit court, that his sentence violated his right to due process and the constitutional prohibition against double jeopardy.  For postconviction relief, the defendant requested that his sentence be declared void, or that his prison sentence be reduced from 20 years to either 10 or 17 years, or that the MSR term and the registration requirement be vacated.

5

¶ 11   The State filed a motion to dismiss the second amended petition. On February 15, 2017, the court held a hearing on the State's motion. The State and postconviction counsel reiterated the points that they had set forth in, respectively, the motion to dismiss and the second amended petition. The court took the matter under advisement. On April 18, 2017, the court entered a short written order granting the State's motion to dismiss the second amended postconviction petition. The defendant filed a timely *pro se* notice of appeal, thus perfecting the instant appeal.

¶ 12                                          ANALYSIS

¶ 13   As previously mentioned, the defendant's court-appointed attorney on appeal, OSAD, has concluded that this appeal lacks merit, and on that basis OSAD has filed a *Finley* motion to withdraw as counsel, along with a memorandum of law in support thereof. In its memorandum, OSAD identifies and discusses several potential issues on appeal, *viz.*, whether the defendant made a substantial showing that (1) his 3-year MSR term violated the fifth amendment's prohibition against double jeopardy; (2) his guilty plea was unknowing and unintelligent because he was not admonished that he would have to register as a convicted first-degree murderer; (3) section 3-6-3 of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/3-6-3 (West 2012)) violates the Illinois Constitution's separation-of-powers clause; and (4) plea counsel provided constitutionally ineffective assistance by (i) failing to inform him that he would be obliged to serve a 3-year MSR term in addition to his 20-year prison term, (ii) failing to inform him that he would be obliged to register for 10 years as a convicted first-degree murderer, and (iii) failing to argue the defendant's double-jeopardy and separation-of-powers claims. An examination of the record on appeal reveals that none of the potential issues identified by OSAD has any merit whatsoever, but this court will briefly address each issue.

¶ 14 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a three-stage mechanism by which a criminal defendant may collaterally attack his conviction based on a substantial denial of his constitutional rights during the proceedings that resulted in the conviction. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Proceedings under the Act are commenced by the criminal defendant's filing of a petition in the circuit court in which the conviction took place. 725 ILCS 5/122-1(b) (West 2016). If a postconviction petition survives the first stage of postconviction proceedings, that is, if the petition is not summarily dismissed as frivolous or patently without merit, it advances to the second stage of postconviction proceedings. 725 ILCS 5/122-2.1(b) (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9-12 (2009).

¶ 15 At the second stage of postconviction proceedings, postconviction counsel may be appointed for an indigent defendant (725 ILCS 5/122-4 (West 2016)), and the State must either answer the postconviction petition or move to dismiss it (725 ILCS 5/122-5 (West 2016)). If the State moves to dismiss the petition, the circuit court must decide whether to grant the State's motion or to advance the petition to the third stage of postconviction proceedings, where an evidentiary hearing is held. *People v. Dupree*, 2018 IL 122307, ¶ 28. At the second stage, all of the petition's allegations must be taken as true, unless they are affirmatively rebutted by the record. *Dupree*, 2018 IL 122307, ¶ 29. There is no room for judicial fact-finding or credibility determinations; those tasks are reserved for the third-stage evidentiary hearing, if one is held. *Dupree*, 2018 IL 122307, ¶ 29. At the second stage, the court merely determines the legal sufficiency of the petition's allegations. *Dupree*, 2018 IL 122307, ¶ 29. The dispositive question for the court is whether the postconviction petition's allegations, supported by affidavits, records, or other evidence, make a substantial showing of a deprivation of constitutional rights. *Dupree*,

7

2018 IL 122307, ¶ 28. If there is no substantial showing, the petition must be dismissed; if a substantial showing is made, the petition is advanced to the third stage, where an evidentiary hearing is held and the court engages in fact-finding and credibility determinations. *Dupree*, 2018 IL 122307, ¶¶ 28-29. This court reviews *de novo* the dismissal of a postconviction petition. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 16 The first potential issue identified by OSAD is whether the defendant's three-year MSR term violated the fifth amendment's prohibition against double jeopardy. The three-year MSR term applies to the defendant's first-degree murder count. In accordance with the parties' fully-negotiated plea agreement, the circuit court sentenced the defendant to 20 years of imprisonment and 3 years of MSR for the first-degree murder. A three-year MSR term was a statutorily required part of the sentencing order for first-degree murder. See 730 ILCS 5/5-8-1(d)(1) (West 2012). The prison term and the MSR term are not two different sentences imposed upon the defendant for a single first-degree murder; they are two parts of a single sentence for the murder. See, *e.g.*, *People v. Lee*, 2012 IL App (4th) 110403, ¶ 32. Double jeopardy is not an issue here.

¶ 17 The second potential issue identified by OSAD is whether the defendant's guilty plea was unknowing and unintelligent because he was not admonished that he would have to register as a convicted first-degree murderer. Under section 5(c-6) of the Violent Offender Act, the defendant will be required to register for a 10-year period "after parole, discharge, or release" from prison. See 730 ILCS 154/5(c-6) (West 2014). At the plea hearing, the circuit court did not admonish the defendant of this registration requirement. However, a court is not obligated to admonish a defendant about a collateral consequence of his plea, *i.e.*, a consequence that is beyond the control of the circuit court and has no effect on the length of the sentence that the court imposed. *People v. Hughes*, 2011 IL App (2d) 090992, ¶ 15. The registration requirement at issue is a consequence

8

beyond the circuit court's control and one that has no effect on the defendant's sentence. In other words, the registration requirement is merely a collateral consequence of the defendant's first-degree murder conviction. See, *e.g.*, *People v. Downin*, 394 Ill. App. 3d 141, 146 (2009) (lifetime registration as a sex offender is merely a collateral consequence of conviction for aggravated criminal sexual abuse). The court was not obligated to admonish the defendant as to the registration requirement, and the defendant's unawareness of the requirement did not render his guilty plea unknowing or involuntary.

¶ 18    The third potential issue identified by OSAD is whether section 3-6-3 of the Corrections Code (730 ILCS 5/3-6-3 (West 2012)) violates the Illinois Constitution's separation-of-powers clause. The defendant would like for section 3-6-3 of the Corrections Code to be invalid because it is section 3-6-3 that prevents him from receiving day-for-day good-time credit toward his 20-year prison sentence for first-degree murder. More specifically, it is section 3-6-3(a)(2)(i) of the Corrections Code that prohibits the sentence credit, requiring the defendant to spend his entire 20-year sentence behind bars. See 730 ILCS 6/3-6-3(a)(2)(i) (West 2012) ("a prisoner who is serving a term of imprisonment for first degree murder *** shall receive no sentence credit and shall serve the entire sentence imposed by the court"). Section 3-6-3 does not violate the separation-of-powers clause. The General Assembly has the undoubted authority to define crimes in Illinois and to fix the punishments therefor. See, *e.g.*, *People v. Taylor*, 102 Ill. 2d 201, 208 (1984) (General Assembly acted within its authority when it mandated natural life imprisonment for anyone convicted of multiple murders). The General Assembly properly made section 3-6-3 a part of Illinois law in 1998 (see *People v. Reedy*, 186 Ill. 2d 1, 17-18 (1999)), and it has remained the law in Illinois ever since.

¶ 19    The fourth potential issue identified by OSAD is whether plea counsel provided constitutionally ineffective assistance by (i) failing to inform him that he would be obliged to serve a 3-year MSR term in addition to his 20-year prison term, (ii) failing to inform him that he would be obliged to register for 10 years as a convicted first-degree murderer, and (iii) failing to argue the defendant's double-jeopardy and separation-of-powers claims. This potential issue, like the others, is meritless. Even if plea counsel failed to inform the defendant of the mandatory three-year MSR term, the circuit court clearly admonished him about it, and the defendant, shortly before pleading guilty, indicated his understanding. As for the registration requirement, plea counsel is not required to advise a client of all possible collateral consequences of a plea; counsel is required to inform the client only of consequences that are "severe, certain, and sufficiently enmeshed in the criminal process." *People v. Hughes*, 2012 IL 112817, ¶ 59. The registration requirement at issue here is a far-from-severe collateral consequence of the defendant's plea. Finally, counsel cannot be faulted for not telling the defendant that the agreed-upon sentence for first-degree murder implicated double jeopardy or the separation of powers. As explained *supra*, the defendant's double-jeopardy and separation-of-powers claims had no merit. Plea counsel cannot be faulted for not sharing meritless legal views with the defendant. The defendant completely failed to make a substantial showing that he was deprived of constitutionally effective assistance, *i.e.*, that plea counsel performed in a deficient manner resulting in prejudice to his case. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (two-pronged test for constitutionally ineffective assistance).

¶ 20                                    CONCLUSION

¶ 21    The circuit court did not err in dismissing the defendant's second amended petition for postconviction relief, for the defendant failed to make a substantial showing of a constitutional

violation. No colorable argument to the contrary can be made. Therefore, OSAD is granted leave to withdraw as counsel on appeal, and the judgment of the circuit court is affirmed.

¶ 22    Motion granted; judgment affirmed.