2020 IL App (1st) 181223-U

No. 1-18-1223

Order filed March 27, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 12720 |
| | ) | |
| MARVIN FIELDS, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the summary dismissal of defendant's postconviction petition because his claim for ineffective assistance of trial counsel is frivolous and patently without merit.

¶ 2     Defendant Marvin Fields appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). He argues that his petition stated an arguable claim that trial counsel was ineffective for failing to call a witness. We affirm.

¶ 3    Defendant was charged by indictment with multiple offenses, including attempt first degree murder of a peace officer (720 ILCS 5/8-4 (West 2010), 720 ILCS 5/9-1(b)(1) (West 2010)). He was tried with co-offender Ronald Jackson in separate but simultaneous jury trials.[1] We set forth the trial evidence in detail in a prior order. People v. Fields, 2016 IL App (1st) 142763-U. Therefore, in this order we will only recite the evidence relevant to this appeal.

¶ 4    Chicago police officer Victor Portis testified that on January 12, 2011, he was in an unmarked vehicle with his partner Officer Andre Dennis, wearing plain clothes with his police star on a chain around his neck. Around 9 p.m., Portis decided to conduct a field interview with two men in an alley between State Street and Lafayette Avenue in Chicago. As Portis approached on foot, one man "fled westbound through the houses towards Lafayette."

¶ 5    Portis radioed to nearby police vehicles and heard that the man was running back towards Portis's location. He saw the man and pursued him, but stopped at State and 120th Place. Portis noticed two other individuals, whom he identified in court as defendant and Ronald, running toward him.

¶ 6    Portis said loudly, "police, *** stop, get back." Defendant stopped and "immediately raise[d] a weapon and fire[d]." Portis drew his weapon from its holster and returned fire. He then dove behind a vehicle and radioed for assistance. As he took cover, he "receive[d] overlapping gunfire," which he believed came from two shooters. Dennis arrived and drove towards Portis. Defendant and Ronald "both got up and fled." Shortly thereafter, Portis learned that defendant had been arrested. Portis went to the location of the arrest and identified defendant as one of the shooters.

[1] Because Ronald Jackson and a witness have the same last name, we refer to him by his first name.

¶ 7 On cross-examination, Portis testified that he wore a "hoodie or a hooded jacket" and gray pants on January 12, 2011. He agreed that he wore this clothing to "blend in" with the area. Portis did not know if defendant knew Portis was a police officer immediately prior to the shooting, and denied holding his firearm when he first encountered defendant or asking "what the f*** are you doing" or "why the f*** [are] you running." Afterwards, Portis spoke to Detective Michele Moore-Grose regarding the incident. Defense counsel asked Portis, "[I]sn't it a fact that you told [Moore-Grose] that you thought these two individuals didn't know that you were a police officer so you yelled, get back, police?" The trial court sustained the prosecutor's objection to the question. Portis believed defendant heard him when he announced his office.

¶ 8 Dennis testified that he worked with Portis on January 12, 2011. When they decided to conduct the field interview with the men in the alley, Dennis exited their vehicle and spoke to one individual while Portis followed the other man. Seconds later, Dennis heard three gunshots. He returned to the vehicle and drove toward the sound of the gunfire. Dennis located Portis behind a vehicle on State. Portis's police star was visibly hanging from his neck. Dennis saw muzzle flashes from gunshots coming from behind a black truck on State and observed the "left side" of a shooter. Based on an earlier encounter, Dennis identified Ronald in court as the man he saw firing at Portis.

¶ 9 On cross-examination, Dennis said he did not see Portis fire any shots on January 12, 2011. Dennis was approximately half a block from Portis during the shooting. He did not hear Portis yell "police."

¶ 10 Chicago police sergeant Eric Jackson testified that he heard a radio dispatch from Dennis and Portis of a foot pursuit. Jackson exited his vehicle and went towards the reported area. He

helped arrest a man who exited a gangway near 119th Place and Lafayette, identified in court as Ronald. Later, Jackson learned that defendant was arrested in a house on the 12000 block of South Lafayette. Jackson secured that location, from which an evidence technician recovered two firearms.

¶ 11    Chicago police officer Timothy Davis testified that he responded to a radio call of an officer in distress near the 11900 block of South Perry Avenue. When he arrived, he saw officers trying to arrest Ronald and assisted by tasering him. Davis then located defendant under a porch on the 12000 block of South Lafayette. Davis identified defendant in court.

¶ 12    Defendant testified that he was near 120th and State on January 12, 2011, when he saw a man running on State. The man wore a "skull cap," a "hoodie," and "jeans." His hair was in "little twisties, like dreads." To defendant, the man appeared to be a "regular person." Standing half a block away, defendant saw a firearm in the man's hand. Defendant did not see anything that suggested the man was a police officer. After the incident, defendant learned the man was Portis.

¶ 13    Portis asked defendant "what the f*** [are] you looking at" or "what the f*** [are] you doing," then "slightly" raised the firearm. Defendant shot at Portis in response because he "was in fear for [his] life" and two of his friends were shot in the area two days before. He "never" would have shot at Portis had he known Portis was a police officer. Defendant asserted that Portis never said anything to identify himself as an officer.

¶ 14    After firing, defendant ran to Lafayette and hid beneath a porch. He saw two police vehicles while he ran, and "was terrified that the police was [*sic*] out here" because he had just

discharged a firearm and the person at whom he had shot was still at large. Officers arrested defendant 40 to 45 minutes later.

¶ 15    On cross-examination, defendant confirmed that he had seen Portis "probably twice" before January 12, 2011. On those occasions, defendant knew Portis was a police officer. Officers patrolling the neighborhood occasionally wore civilian clothes instead of uniforms. Defendant never saw Ronald on the night of January 12, 2011, and was alone when he saw Portis. He was defending himself when he fired his weapon, and Portis returned fire.

¶ 16    On redirect, defendant said he had a conversation with Portis a month earlier that lasted three to four minutes. Defendant did not recognize Portis on the night of the shooting. The block where the incident occurred was "dimly-lit." Defendant fired his weapon 9 or 10 times, and Portis fired back "probably more" times.

¶ 17    During closing argument, defense counsel contended that defendant fired his weapon because "he feared for his life." Counsel emphasized that it was dark and defendant likely focused on the firearm in Portis's hand, so it was not "reasonable" to think defendant could have seen a star around Portis's neck. Further, the evidence suggested Portis did not identify himself. Thus, counsel argued, the evidence showed that defendant acted in self-defense and did not know Portis was an officer at the time of the shooting.

¶ 18    At defendant's request, the court instructed the jury on (1) attempt first degree murder of a peace officer; (2) the lesser-included offenses of attempt first degree murder, aggravated discharge of a firearm in the direction of a peace officer, and aggravated discharge of a firearm in the direction of a person; and (3) self-defense. The jury found defendant guilty of attempt first

degree murder. The court denied defendant's motion for a new trial, and after a hearing, sentenced defendant to 37 years' imprisonment.

¶ 19    On direct appeal, defendant argued that (1) the jury's verdict demonstrated that it believed defendant had an unreasonable belief in the need for self-defense, (2) his trial attorney provided ineffective assistance for not requesting a jury instruction on unreasonable belief in the need for self-defense, (3) the State committed prosecutorial misconduct, and (4) his sentence was excessive. This court affirmed defendant's conviction. See *People v. Fields*, 2016 IL App (1st) 142763-U. In so ruling, we rejected defendant's argument that the jury's verdict demonstrated that it found defendant acted with an unreasonable belief in the need for self-defense. Instead, we found that "the only legally permissible inference" from the verdict was that the jury found (1) the evidence did not prove that defendant knew Portis was a police officer at the time of the shooting, and (2) defendant still "did not act in self-defense." *Id.* ¶¶ 24, 27.

¶ 20    Defendant filed a *pro se* petition for postconviction relief on December 28, 2017. The petition alleged that (1) the indictment was improper, (2) the trial court conducted an insufficient *voir dire*, (3) the trial court enhanced defendant's sentence based on an improper factor, (4) trial counsel was ineffective for not calling Officer Michele Moore-Grose in rebuttal to testify that Portis told her he did not believe defendant knew he was an officer at the time of the shooting, and (5) appellate counsel was ineffective for not raising these issues on direct appeal. In relevant part, defendant argued that had Moore-Grose testified as described above, he could have obtained a jury instruction regarding "use of force in defense of person." Defendant did not attach an affidavit from Moore-Grose to the petition.

¶ 21　On March 2, 2018, the circuit court entered a written order dismissing defendant's petition as frivolous and patently without merit. Regarding defendant's claim for ineffective assistance of trial counsel, the court found defendant's petition implicated a "matter of trial strategy" and presented "nothing to indicate" that counsel's decision not to call Moore-Grose "fell below an objective standard of reasonableness." The court also noted that defendant provided no affidavit from Moore-Grose or explanation for the lack thereof.

¶ 22　On appeal, defendant argues that the circuit court erred in dismissing his postconviction petition because his claim for ineffective assistance of trial counsel was not frivolous or patently without merit.

¶ 23　The Act "provides a method by which persons under criminal sentence in [Illinois] can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (citing 725 ILCS 5/122-1 *et seq.* (West 2016)). Proceedings under the Act consist of three stages of review. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, the defendant's petition must only present the "gist" of a constitutional claim. *People v. Bailey*, 2017 IL 121450, ¶ 18. The circuit court should only dismiss a petition at the first stage if the defendant's claims are "frivolous or patently without merit," which generally means that the claims have "no arguable basis either in law or in fact." *People v. Boykins*, 2017 IL 121365, ¶ 9. A defendant's postconviction petition may only raise issues that were not and could not have been raised in an earlier proceeding. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). As such, any issue that could have been raised on direct appeal, but was not, is forfeited. *Id.* The reviewing court considers the dismissal of a postconviction petition at the first stage *de novo*. *Boykins*, 2017 IL 121365, ¶ 9.

¶ 24    Every criminal defendant has the right to effective assistance of trial counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant claiming ineffective assistance must show that counsel's conduct "fell below an objective standard of reasonableness," and the conduct prejudiced the defendant. *Strickland*, 466 U.S at 687-88, 692. To survive first-stage review, a postconviction petition alleging ineffective assistance of counsel must show that "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 25    A postconviction petition alleging ineffective assistance of counsel for failure to call a witness typically must be supported by an affidavit from that witness. See *People v. Enis*, 194 Ill. 2d 361, 380 (2000); 725 ILCS 5/122-2 (West 2016). If the nature of the proposed testimony is discernible from the record or other attachments to the petition, however, the lack of an affidavit from the uncalled witness is not necessarily fatal to the claim. *People v. Dupree*, 2018 IL 122307, ¶ 34.

¶ 26    A person is guilty of attempt first degree murder when he performs a substantial step towards killing an individual, with the intent to kill or do "great bodily harm," and without "lawful justification." 720 ILCS 5/8-4 (West 2010); 720 ILCS 5/9-1(a)(1) (West 2010). To establish attempt first degree murder of a peace officer, the State must also show that the targeted "individual was a peace officer *** in the course of performing his official duties" and "the defendant knew or should have known that the *** individual was a peace officer." 720 ILCS 5/8-4 (West 2010); 720 ILCS 5/9-1(b)(1) (West 2010).

¶ 27    We find that defendant's ineffective assistance of trial counsel claim is frivolous and patently without merit because he cannot demonstrate arguable prejudice from trial counsel's failure to call Moore-Grose in rebuttal. Initially, we note that defendant did not attach an affidavit from Moore-Grose to his petition. Therefore, the only indication of her potential testimony derives from defense counsel's question to Portis regarding whether he told her that he did not believe defendant knew he was a police officer at the time of the shooting. The trial court, however, sustained the State's objection to the question. Thus, no evidence in the record or attached to defendant's petition shows whether Moore-Grose would have testified as defendant now alleges.

¶ 28    Given these circumstances, we reject defendant's reliance on *Dupree*. In *Dupree*, the appellate court ruled that the defendant's second-stage postconviction petition was inadequate as a matter of law because he failed to attach an affidavit from the proposed witness. *Dupree*, 2018 IL 122307, ¶ 30. The supreme court reversed, finding that the defendant's claim could proceed without an affidavit because the defendant attached to the petition signed statements from the proposed witness to the police. *Id.* ¶ 41. In so finding, the court explained that in lieu of an affidavit, proposed testimony must be discernible from other information in the trial record or attached to the petition. *Id.* ¶¶ 34-42. If the proposed witness is the only source of the information, however, an affidavit is necessary and its absence is fatal. *Id.* ¶ 40. Here, unlike in *Dupree*, no evidence in the record or attached to defendant's petition establishes the content of Moore-Grose's testimony.

¶ 29    Even if we accepted that defense counsel's question to Portis was indicative of Moore-Grose's potential testimony, the court properly dismissed defendant's petition because he could

not establish arguable prejudice from the testimony's absence. As this court noted on direct appeal, the jury found that the State failed to prove defendant knew Portis was an officer, but still rejected defendant's self-defense theory and found him guilty of attempt first degree murder. See *Fields*, 2016 IL App (1st) 142763-U, ¶¶ 24-27. Moore-Grose's proposed testimony could not have affected this outcome because the jury found in defendant's favor on the lone issue she would address, that is, whether defendant knew Portis was an officer, a fact not relevant to defendant's self-defense theory.

¶ 30 Defendant's claim is frivolous and patently without merit because he cannot show arguable prejudice. Accordingly, we affirm the summary dismissal of his postconviction petition.

¶ 31 Affirmed.