NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220605-U

NO. 4-22-0605

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 6, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RODOLFO LUNA, | ) | No. 20CF211 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), the appellate court granted the Office of the State Appellate Defender's motion to withdraw because no meritorious issues could be raised on appeal.

¶ 2    On December 20, 2021, after a bench trial, the trial court found defendant, Rodolfo Luna, guilty of three counts: one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) (count I), and two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) (counts II and III). On May 9, 2022, the court sentenced defendant to 25 years' imprisonment on count I, to run consecutively to two concurrent terms of 3 years each on counts II and III. Defendant appealed, and this court appointed the Office of the State Appellate Defender (OSAD) as appellate counsel.

¶ 3        In January 2023, OSAD filed a motion to withdraw as counsel with an accompanying memorandum. OSAD confirmed it reviewed the record, identified potential issues, and explained why it believed this case presented no potentially meritorious issues for review. As required, OSAD notified defendant, providing him with a copy of the motion and memorandum. We granted defendant 35 days to respond, and he submitted a response, claiming his innocence and that his mental health deprived him of a fair trial. We agree with OSAD's analysis, grant OSAD's motion to withdraw as counsel, and affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5        In August 2020, defendant was charged with the offenses mentioned above, which stemmed from alleged sexually inappropriate conduct with his girlfriend's daughter, Y.G., who was 12 years old at the time of the offenses in July 2019.

¶ 6        Y.G. testified she lived with her mother and defendant. She described two incidents in June or July 2019 when defendant came into her bedroom while she was sleeping. During the first incident, defendant stood over her and touched her breasts and vagina. He stopped when she jerked her body to indicate she was awake. During the second incident, he got on top of her on the bed and touched her breasts and "down there." He then pulled down her shorts and put his penis in her vagina. She again jerked her body to stop him. She said she did not immediately tell anyone about the incidents because she was scared. She said defendant was involved in an accident in August 2019 and, despite him being out of the house and in the hospital for approximately one month, she still did not tell anyone. One year later, after her mother and defendant ended their relationship, and after she and her mother moved in with her aunt, she told her mother what had happened.

¶ 7        After presenting the trial court with a stipulation of defendant's date of birth, the State rested. Defendant moved for a directed verdict, which the court denied.

¶ 8        Defendant testified he had raised Y.G. since she was an infant. He considered them to have a great relationship. In fact, he said, Y.G. was the only person to give him a Christmas present in 2020. He denied ever touching Y.G. inappropriately. He also denied ever attempting to or having sex with Y.G.

Defendant testified he lived with his girlfriend, Y.G.'s mother, in Pontiac, Odell, Kankakee, and Dwight. In July 2019, they lived in Dwight. He said, at that time, he was working construction in Mendota, which was approximately one and a half hours away. He would wake up by 5:30 a.m. and not return home until evening, sometimes as late as 11 p.m. He described the floor plan of their home, stating his bedroom was upstairs on the right and Y.G.'s was upstairs on the left. Y.G. often fell asleep in her bedroom watching television, sometimes with the door open. Either Y.G.'s mother or he would turn off her television before going to bed. When asked to describe things he and Y.G. used to do together, he said his accident, which occurred on August 19, 2019, prevented him from remembering "a lot of things we do before." He said he did not remember Y.G. ever trying to avoid contact with him. He further testified he was never alone with Y.G. at night.

¶ 9        On December 20, 2021, based upon the evidence presented, the trial court found defendant guilty of all three counts. On January 21, 2022, defendant filed a motion for a mental-health examination to support his contentions he (1) was unfit and (2) could prove his insanity at the time of the offense.

¶ 10        On January 31, 2022, the date scheduled for sentencing, defendant informed the trial court his newly appointed public defender, who was different than his public defender at trial, knew "nothing about [his] case." He indicated he was looking for a new attorney. The court noted

it was "not doing anything today in terms of the sentencing hearing," allowed a continuance, granted defendant's motion for a mental-health examination, and appointed psychiatrist Dr. Terry Killian to conduct the examination. According to the associated report, Dr. Killian found defendant fit.

¶ 11     On May 9, 2022, the trial court conducted a sentencing hearing. The State presented as its only evidence a victim impact statement. Defendant presented letters from seven individuals as to his character. After considering the evidence, the presentence investigation report (PSI), the recommendations of counsel, defendant's statement in allocution, and the applicable statutory factors, the court sentenced defendant to 25 years in prison on count I, to run consecutively to two concurrent terms of 3 years each on counts II and III, for what the court mistakenly indicated was a total aggregate sentence of 31 years in prison. The court noted deterrence, defendant's position of trust, and the fact the crime occurred in the sanctity of Y.G.'s bedroom as the primary factors in aggravation.

¶ 12     On May 16, 2022, defendant filed a motion for a new trial, challenging, *inter alia*, the sufficiency of the State's evidence and arguing he was unable to adequately assist in his defense due to his loss of memory. Two days later, defendant filed a motion to reconsider his 31-year sentence, claiming it was excessive. The State pointed out the error in the calculation of the aggregate sentence. After considering the arguments of counsel, the trial court denied defendant's motion for a new trial and entered a corrected sentencing judgment, still reflecting an aggregate sentence of 31 years in prison but changing the concurrent three-year terms to six-year terms on counts II and III.

¶ 13     This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15        In its memorandum, OSAD addresses several potential arguments defendant could raise, including (1) whether the State presented sufficient evidence of guilt for each offense, (2) whether defendant properly waived a jury trial, (3) whether any improper evidence was admitted at trial, (4) whether trial counsel provided ineffective assistance by failing to inquire about defendant's fitness *before* trial, (5) whether the trial court erred in failing to conduct a fitness hearing once a *bona fide* doubt of defendant's fitness was raised, (6) whether defendant should have had the benefit of an interpreter at trial, and (7) whether any errors occurred at sentencing. After analyzing each issue, OSAD contends any appeal in this case would be frivolous. We agree with OSAD, grant its motion to withdraw as counsel, and affirm the court's judgment.

¶ 16                          A. Sufficiency of the Evidence

¶ 17        OSAD first contends no meritorious argument can be made to challenge the sufficiency of the evidence to sustain defendant's convictions for predatory criminal sexual assault of a child and aggravated criminal sexual abuse. For predatory criminal sexual assault of a child, the State was required to prove beyond a reasonable doubt defendant, who was over 17 years of age, committed an act of *sexual penetration* of Y.G., who was under 13 years of age at the time. See 720 ILCS 5/11-1.40(a)(1) (West 2020). For aggravated criminal sexual abuse, the State was required to prove beyond a reasonable doubt defendant, who was over 17 years of age, committed an act of *sexual conduct* with Y.G., who was under 13 years of age at the time. See *id.* § 11-1.60(c)(1)(i). "Sexual conduct" is defined as "any knowing touching or fondling by *** the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of *** the accused." See *id.* § 11-0.1.

¶ 18        OSAD questions whether an appeal challenging the sufficiency of the evidence would be nonfrivolous. When considering a defendant's challenge to the sufficiency of the

- 5 -

evidence, a reviewing court will not disturb the factfinder's decision if any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt when the evidence is viewed in a light most favorable to the State. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007).

¶ 19　　　　The State presented testimony from Y.G., who described two different incidents on two separate nights when defendant entered her bedroom while she was sleeping. During the first incident, defendant stood at the side of her bed and, with his hands, touched her "boobs and [her] vagina." During the second incident, defendant got on top of her and "was touching [her] on [her] boobs" and "down there." She said he "put his hand under" her shirt and was "[k]ind of like grabbing and rubbing." During this second occurrence, defendant pulled down her shorts. Y.G. described the incident of penetration. She testified, during the touching, defendant "stuck his penis in [her] vagina."

¶ 20　　　　On the other hand, defendant denied *any* sexual contact with Y.G., including any penetration. He described his relationship with Y.G. as "[a]ll the time it was good, great." He said they used to go fishing. However, he said, due to his accident, he could not recall things in the last three to five years. According to this testimony, defendant had difficulty remembering things that occurred between 2016 and 2018. The incidents described by Y.G. occurred in June or July 2019. Defendant's accident occurred in August 2019.

¶ 21　　　　The trial court, as the factfinder, had the responsibility to resolve conflicts in the evidence, determine the credibility of the two opposing witnesses, and decide what weight should be given to their testimony. See *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). Our supreme court has noted the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The trial court here specifically

found "the victim to be a credible witness" and defendant not "particularly credible because \*\*\* his testimony was not consistent within itself" due to reported "memory issues."

¶ 22 We, as the reviewing court, should not engage in a credibility determination when reviewing the sufficiency of the evidence. *People v. Eubanks*, 2019 IL 123525, ¶ 95. We defer to the factfinder's credibility determinations. *Smith*, 185 Ill. 2d at 542. However, the factfinder's determinations are not necessarily conclusive or binding. That is, we will reverse a conviction, despite the prior credibility determination, where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Id.* That is not the case here.

¶ 23 After determining Y.G. was more credible, the trial court found defendant guilty on all three counts. Based on the clear and consistent testimony of the victim, and considering defendant's reported memory loss, we agree with OSAD's assessment. Any appellate challenge to the sufficiency of the evidence on any of his convictions would be frivolous, as the evidence presented at trial could not be described as unreasonable, improbable, or unsatisfactory in terms of raising a reasonable doubt of defendant's guilt or justifying a reversal of his convictions. Because we defer to the factfinder's credibility determinations and will not disturb that determination unless the evidence justifies it, OSAD could present no meritorious argument challenging the sufficiency of the evidence in this case.

¶ 24 B. Waiver of Jury Trial

¶ 25 OSAD next contends no meritorious argument can be made that defendant did not knowingly or voluntarily waive his right to a jury. Both the United States and Illinois Constitutions afford a criminal defendant the fundamental right to a jury trial. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. Section 103-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-6 (West 2020)) provides a defendant can waive his right if he "understandingly"

does so in open court. Although there is no specific admonition to be given by the trial court, the determination of whether a jury waiver is valid depends on the facts and circumstances of each particular case. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). Because the facts are not disputed, the issue of whether defendant understandingly and validly waived his right to a jury is a question of law and is reviewed *de novo*. *Id.*

¶ 26        The record makes clear defendant knowingly and voluntarily waived his right to a jury trial. First, he filed a written waiver signed by both him and the trial court. The waiver, dated June 16, 2021, which was a few months before his bench trial began, provides as follows: "The undersigned defendant, having been fully advised of my right to a trial by jury in this cause, hereby knowingly and voluntarily waive[s] said right, and I consent to a bench trial by the court." This waiver was presented to the court the same day it was signed. The court orally admonished defendant regarding (1) the differences between a jury trial and a bench trial and (2) the permanency of a waiver. The court questioned defendant about whether he was forced to waive a jury or promised anything in return for his waiver. Defendant answered no and confirmed he spoke with his attorney about the decision. The court found "a knowing and voluntary waiver of the right to a jury trial."

¶ 27        Given these circumstances, we agree with OSAD. There appears to be no basis upon which counsel could formulate a meritorious challenge to defendant's jury waiver.

¶ 28                          C. Improper Admission of Evidence

¶ 29        OSAD next contends it considered raising the same claim defense counsel raised in her motion for a new trial. In the motion, counsel alleged the trial court admitted inadmissible evidence. However, she did not identify the evidence. At the hearing on the motion, counsel argued

only for her "primary argument," which addressed defendant's memory issue. She did not mention the improper admission of evidence.

¶ 30        The State's evidence admitted at trial consisted only of Y.G.'s testimony and a stipulation regarding defendant's date of birth. Defense counsel did not object to any of Y.G.'s testimony and agreed to the admission of the stipulation. As such, any potential error in the admission of evidence was forfeited due to defendant's (1) failure to properly preserve the issue or (2) acquiescence in its admission. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (holding that to preserve an argument for appeal, the defendant must object at trial and raise the specific issue in a posttrial motion). See also *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (holding when a defendant acquiesces in the admission of evidence, he cannot contest the admission on appeal).

¶ 31                    D. Ineffective Assistance of Counsel

¶ 32        OSAD considered raising a claim regarding defense counsel's failure to investigate defendant's fitness *before* trial. However, after considering counsel's conduct in relation to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), OSAD concluded defendant would be unable to demonstrate prejudice. See *Strickland*, 466 U.S. at 687 (holding to establish ineffective assistance of counsel, the defendant must demonstrate counsel's performance was deficient and that such deficiency prejudiced him).

¶ 33        Section 104-10 of the Code states a defendant is presumed fit to stand trial. However, if "he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense" due to a mental or physical condition, he is unfit. 725 ILCS 5/104-10 (West 2020). "The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51. The trial court has a duty to order a fitness hearing once facts are brought to the court's attention that raise a *bona fide* doubt of the defendant's

fitness to stand trial. *People v. McCallister*, 193 Ill. 2d 63, 110-11 (2000). "The *bona fide* doubt inquiry is focused primarily on whether the defendant is able to understand the nature and purpose of the proceedings and to assist in his defense." *Id.* at 110. When assessing whether a *bona fide* doubt exists, relevant factors a trial court may consider include a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 91.

¶ 34        The question presented here is whether trial counsel was ineffective for not bringing to the trial court's attention the possibility defendant was not fit to stand trial. OSAD claims it could make no reasonable argument to that effect, and we agree. The record does not include *any* facts or circumstances which would have caused counsel to suspect defendant was unable to understand the nature and purpose of the proceedings. As OSAD suggests, if there are such facts and circumstances outside of the record, defendant's claim would be better suited for collateral proceedings. For the purpose of this direct appeal, any claim raising an ineffective- assistance-of-counsel argument would be without merit.

¶ 35                            E. Failure to Conduct a Fitness Hearing

¶ 36        OSAD next contends it considered whether the trial court erred in failing to conduct a fitness hearing after Dr. Killian's appointment and evaluation. The court's order of appointment was governed by section 104-11(b) of the Code (725 ILCS 5/104-11(b) (West 2020)), which provides the court with discretion to appoint an expert upon defendant's request for an examination to determine whether a *bona fide* doubt as to his fitness *may be raised*. Pursuant to this subsection, it applies when the court has not determined the existence or been made aware of a *bona fide* doubt of a defendant's fitness. Further proceedings are not halted pending the evaluation. *Cf.* 725 ILCS 5/104-11(b) (West 2020). Subsection (b) may be applied when the court is not convinced a

*bona fide* doubt exists but nevertheless agrees to allow the defendant's request to undergo an evaluation to aid in the determination of fitness. See *People v. Hanson*, 212 Ill. 2d 212, 217 (2004). If, after the examination, the court finds no *bona fide* doubt, no fitness hearing is necessary. *Id.*

¶ 37        In open court, on April 25, 2022, defense counsel advised the trial court Dr. Killian had found defendant fit. Because, as explained above, no *bona fide* doubt of defendant's fitness was raised or evident from the record, the court did not err by not conducting a hearing on the issue.

¶ 38                              F. Need for an Interpreter

¶ 39        OSAD next questions whether the trial court erred in failing to provide defendant with an interpreter at trial. Section 1 of the Criminal Proceeding Interpreter Act (725 ILCS 140/1 (West 2020)) requires the court to appoint an interpreter for a defendant who is incapable of either understanding the English language or expressing himself in the English language.

¶ 40        Here, defendant insisted throughout the proceedings he did not need an interpreter. He testified at trial without an apparent issue. He provided responsive answers indicating he understood the questions asked. In fact, at a hearing on January 31, 2022, a new public defender appeared on defendant's behalf, and she presumably secured the presence of an interpreter. Defendant stated: "I don't need an interpreter. I can understand everybody. [The public defender] needs one." On this record, the trial court had no reason to believe defendant was incapable of understanding the English language to warrant the appointment of an interpreter.

¶ 41                              G. Sentencing Errors

¶ 42        Finally, OSAD contends no issues arose during defendant's sentencing hearing that would justify an appeal challenging any potential errors. Defendant was convicted of one Class X felony, which had a sentencing range of 6 to 60 years in prison (720 ILCS 5/11-1.40(b)(1) (West

2020)), and two Class 2 felonies, which each had a sentencing range of 3 to 7 years in prison (730 ILCS 5/5-4.5-35 (West 2020)). The trial court sentenced defendant to 25 years on the Class X conviction, to run consecutively to two concurrent terms of 3 years (later corrected to 6 years) each on the Class 2 convictions. The court had no discretion on the consecutive nature of the terms. See *id.* § 5-8-4(d)(2).

¶ 43    When imposing the sentence, the trial court indicated it had considered the "very serious" nature of the crimes, the statutory factors in aggravation and mitigation, the PSI, the victim impact statement, arguments of counsel, and defendant's statement in allocution. The court noted deterrence was "a very, very, very strong factor" in aggravation, as well as defendant's position of trust over Y.G. and the need to punish defendant's conduct. Although the court accepted the fact defendant was "a hard-working man" and "a caring person," as indicated in the letters submitted, those characteristics of defendant "[don't] make it any better." The court noted as factors in mitigation defendant's gainful employment and "very strong friendships."

¶ 44    The record indicates the trial court thoughtfully weighed the appropriate aggravating and mitigating factors and sentenced defendant to a term within the permissible sentencing range. A sentence imposed within the permissible range, after considering and weighing the applicable factors in aggravation and mitigation, is generally not considered an abuse of discretion. See *People v. Flores*, 404 Ill. App. 3d 155, 157-58 (2010) (noting the trial court has wide latitude in sentencing a defendant if it does not ignore mitigating factors or improperly consider aggravating factors). Based on the record before us, it appears OSAD's assessment is correct: no colorable argument could be made that defendant's sentence constituted an abuse of discretion.

¶ 45                        III. CONCLUSION

¶ 46        For the reasons stated, we grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 47        Affirmed.