NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240478-U

NO. 4-24-0478

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RODOLFO LUNA, | ) | No. 20CF211 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Because the petition for postconviction relief has no arguable basis either in law or in fact, the circuit court was correct to summarily dismiss the petition.

¶ 2     Defendant, Rodolfo Luna, who is serving a sentence of imprisonment for sex crimes, petitioned the circuit court of Livingston County for postconviction relief. The court summarily dismissed the petition, finding it was frivolous or patently without merit. Defendant appeals. In our *de novo* review, we agree with the circuit court's assessment of the petition. Therefore, we affirm the circuit court's judgment.

¶ 3                              I. BACKGROUND

¶ 4     On December 20, 2021, at the conclusion of a bench trial, the circuit court found defendant guilty of count I of the information, predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2018)); count II, aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)); and

count III, another count of aggravated criminal sexual abuse (*id.*). These were offenses that defendant committed against a 12-year-old girl, Y.G.

¶ 5        On January 21, 2022, pursuant to section 104-11(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11(a) (West 2022)), defense counsel raised a *bona fide* doubt as to defendant's fitness and, accordingly, requested that the circuit court order a mental examination of defendant.

¶ 6        On January 31, 2022, the circuit court entered an order stating, "There has been no finding by the court that a *bona fide* doubt as to fitness has actually been raised[;] however, the court, in its discretion, finds that there is a basis to grant the motion for an examination." The court appointed a psychiatrist, Dr. Terry Killian, to perform a mental examination of defendant.

¶ 7        On April 7, 2022, after the examination, Dr. Killian diagnosed defendant as suffering from "cognitive impairment secondary to a traumatic brain injury on [August 29, 2019]." Nevertheless, Dr. Killian made the following findings:

> "(1) Fitness to Stand Trial: It is my opinion, within a reasonable degree of psychiatric certainty, that [defendant] is currently fit to stand trial. He demonstrated a more than adequate understanding of the nature and purpose of the proceedings against him and appears quite capable of assisting his attorney *** in his own defense.
>
> (2) Sanity: It is my opinion, within a reasonable degree of psychiatric certainty, that at the time of the July and August 2019 allegations against him, [defendant] was apparently NOT suffering from any type of psychiatric or emotional problems that would have impaired his capacity to appreciate the criminality of his alleged offenses. His serious head injury was at the very end of

- 2 -

August 2019, and he was hospitalized for more than two months after that, so apparently the alleged offenses took place before his head injury, at a time [defendant] denies having had any kind of psychiatric or cognitive impairments."

¶ 8    On May 9, 2022, the circuit court imposed the following sentences of imprisonment: 25 years for count I, 3 years for count II, and 3 years for count III. The court ordered that the prison terms on counts II and III would run concurrently with one another but consecutively to the prison term on count I.

¶ 9    Defendant took a direct appeal, but the Office of the State Appellate Defender (OSAD) moved for permission to withdraw from representing him because OSAD could find "no potentially meritorious issues for review." *People v. Luna*, 2023 IL App (4th) 220605-U, ¶ 3. In a memorandum accompanying its motion, OSAD explored and rejected several issues, including the following:

> "(4) whether trial counsel provided ineffective assistance by failing to inquire about defendant's fitness *before* trial[ ] [and] (5) whether the trial court erred in failing to conduct a fitness hearing once a *bona fide* doubt of defendant's fitness was raised." (Emphasis in original.) *Id.* ¶ 15.

We agreed with OSAD that the direct appeal was unarguable. See *id.* ¶ 3. With respect to issue No. 4, quoted above, we reasoned:

> "The record does not include *any* facts or circumstances which would have caused counsel to suspect defendant was unable to understand the nature and purpose of the proceedings. As OSAD suggests, if there are such facts and circumstances outside of the record, defendant's claim would be better suited for collateral proceedings. For the purpose of this direct appeal, any claim raising an

ineffective-assistance-of-counsel argument would be without merit." (Emphasis in original.) *Id.* ¶ 34.

With respect to issue No. 5, we reasoned:

"In open court, on April 25, 2022, defense counsel advised the trial court Dr. Killian had found defendant fit. Because, as explained above, no *bona fide* doubt of defendant's fitness was raised or evident from the record, the court did not err by not conducting a hearing on the issue." *Id.* ¶ 37.

We granted OSAD's motion to withdraw in the direct appeal, and we affirmed the circuit court's judgment. *Id.* ¶ 46.

¶ 10 On November 27, 2023, defendant filed a *pro se* petition for postconviction relief. He made three claims in his petition.

¶ 11 First, defendant claimed that trial counsel had rendered ineffective assistance by (1) failing to object when the circuit court "went immediately to sentencing without consideration and/or mention of [the] Forensic Psychiatric exam in aggravation nor [*sic*] mitigation" and (2) failing to "mention to the court [defendant's] medical record," which "reflect[ed] memory impairments."

¶ 12 In addition to Dr. Killian's report, defendant attached to his petition a consult note from St. Francis Medical Center dated September 11, 2019. According to this consult note, defendant was admitted to the hospital on August 29, 2019, with a traumatic injury. Under the heading of "Current Functional Status," the consult note reads as follows:

"Patient presents with the following impairments: attention, memory, problem solving, comprehension, expression, orientation. These impairments lead to functional deficits with the following activities: awareness of surroundings and

events, recall of information, poor safety awareness and decision making, understanding of basic questions and directions, communication of needs and ideas."

¶ 13 Second, defendant claimed that "[t]rial counsel was ineffective due to [failing] to investigate and obtain witnesses in his favor." Defendant continued, "[Defendant] provided to trial counsel information of different people disposed to testif[y] and help[ ] *** to support [defendant] on his mental impairment and refute the state[']s evidence and expose the state[']s witnesses['] (Y.G.) fabricate[d] testimony." In his petition, defendant did not specify who these different people were and what exactly they would have said on the witness stand.

¶ 14 Third, in his *pro se* petition, defendant complained of the "[f]ailure to consider," at trial, "[d]efendant's incompetence." He argued, "It's really important that the defendant be competent to stand trial, it's essential for him to protect his constitutional rights, and *** contribute to his defense."

¶ 15 On January 24, 2024, the circuit court summarily dismissed the postconviction petition.

¶ 16 On February 20, 2024, defendant filed his notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18 Within 90 days after a postconviction petition is filed, the circuit court is supposed to summarily dismiss the petition if the court determines that the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). "A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact." (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 125738, ¶ 26. We decide *de novo* whether the petition meets that description. See *People v. Brown,* 236 Ill. 2d 175, 184 (2010).

¶ 19    On appeal, defendant argues that trial counsel "was ineffective for failing to interview, investigate[,] and call to the witness stand those who could attest to the mental and medical condition." The trouble is, the only mental and medical condition that the record shows defendant having during the pendency of the proceedings below was that which Dr. Killian diagnosed: "cognitive impairment secondary to a traumatic brain injury on [August 29, 2019]." Defendant does not explain how a traumatic brain injury that he sustained after his crimes against Y.G. would have been relevant at trial.

¶ 20    Granted, if "[t]he defendant was a person with an intellectual disability as defined in Section 5-1-13" (730 ILCS 5/5-1-13 (West 2018)), that factor "shall be accorded weight in favor of *** minimizing a sentence of imprisonment." *Id.* § 5-5-3.1(a)(13). While all intellectually disabled people, however, have a cognitive impairment, not all cognitively impaired people have an intellectual disability. The term " '[i]ntellectual disability' means sub-average general intellectual functioning generally originating during the developmental period and associated with impairment in adaptive behavior reflected in delayed maturation or reduced learning ability or inadequate social adjustment." *Id.* § 5-1-13. The record appears to lack evidence that, at trial and sentencing, defendant was "a person with an intellectual disability," so defined. See *id.* § 5-5-3.1(a)(13). The record gives no reason to suppose that his condition at St. Francis Medical Center, in August and September 2019, was his condition in December 2021, when he was tried, and in May 2022, when he was sentenced. Rather, Dr. Killian found, "[Defendant] appears to be of at least average intelligence[,] and he performed pretty well on the brief intellectual function screening test I gave him."

¶ 21    An equally grave defect in the postconviction petition—beyond the uncertainty of how, from a legal point of view, the unnamed witnesses could have helped defendant at trial and

sentencing—is that these witnesses are, in fact, unnamed, and statements by them are not attached to the petition.

¶ 22       The supreme court has held:

"[W]hile a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. As a result, the failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." (Internal quotation marks omitted.) *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008).

The supreme court has further held:

"In cases where a postconviction petitioner raises a claim of ineffective assistance based on counsel's failure to call a witness, an affidavit from the proposed witness will be required if it is essential for the postconviction petitioner to make the necessary 'substantial showing' to support a claim of ineffective assistance. It may be true that in most cases where this type of claim is raised, without an affidavit, there can be no way to assess whether the proposed witness could have provided evidence that would have been helpful to the defense." *People v. Dupree*, 2018 IL 122307, ¶ 34.

Without affidavits from the uncalled witnesses or some other evidence corroborating that they would have given certain testimony, defendant failed to make the substantial showing necessary to support a claim of ineffective assistance. See *id.*

¶ 23                              III. CONCLUSION

¶ 24   For the foregoing reasons, we affirm the circuit court's judgment.

¶ 25   Affirmed.